JUDGE DANIELS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

FREDERICK M. CARGIAN,

15 CV 01084

        Plaintiff,

    against

BREITLING USA, INC.,

        Defendant.
-------------------------------------------------------------x

COMPLAINT

JURY TRIAL DEMANDED



RECEIVED
FEB 17 2015
U.S.D.C. S.D.N.Y.
CASHIERS

1.    This is a proceeding brought to remedy the violations of rights secured to plaintiff by the Civil Rights Act of 1964, as amended, 42 U.S.C., § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, New York Executive Law, § 296, *et seq.* ("State HRL"), and the New York City Human Rights Law, New York City Administrative Code, § 8-101, *et seq.* ("City HRL"), and to remedy age discrimination in the terms and conditions of employment in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C.§ 621 et seq. ("ADEA") and the State and City HRLs.

2.    Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, liquidated damages and other appropriate legal and equitable relief pursuant to Title VII, the ADEA, and the State and City HRLs.

## JURISDICTION

3.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1334(4) conferring original jurisdiction upon this court over any civil action to recover damages or to seek equitable relief under any act of Congress providing for the protection of civil rights, and pursuant to Title VII and the ADEA. The court's supplemental jurisdiction is invoked

pursuant to 28 U.S.C. § 1367 on the ground that the acts challenged herein are also in violation of the laws of the State and City of New York.

## ADMINISTRATIVE PREREQUISITES

4.  On January 9, 2015, more than 180 days having elapsed since the filing of his charge, plaintiff received a right to sue letter from the United States Equal Employment Opportunity Commission ("EEOC").

5.  On February 10, 2015, prior to filing this complaint, plaintiff served a copy of it on the New York City Commission on Human Rights, and the Corporation Counsel of the City of New York, pursuant to § 8-502(c) of the City HRL.

## PARTIES

6.  Plaintiff was an employee of defendant within the meaning of Title VII, the New York State and New York City HRLs.

7.  Defendant is an employer within the meaning of Title VII, 42 U.S.C. § 2000e, *et seq.*, the ADEA, and the State and City HRL's.

8.  Defendant's Corporate Headquarters are located at 206 Danbury Road, Wilton, Connecticut.

9.  Defendant sells its watches throughout New York State and operates Breitling Stores at 5 East 57th Street, New York, New York, and Woodbury Commons, Central Valley, New York.

## STATEMENT OF CLAIM

10. Plaintiff is a 54 year old gay man, having been born November 23, 1960.

11. Plaintiff was hired by Breitling USA, Inc. in February 1990 as the Training Manager.

12. At the time he was hired, Breitling, a Swiss manufacturer of high end watches, had a very small U.S. presence or brand recognition.

13. In 1990, there were approximately 6 or 7 North American employees of Breitling. It has grown to a present size of approximately 140 employees.

14. At all times relevant, while employed by Breitling, plaintiff, a New York City resident, worked from his home office which was his Breitling office for all purposes.

   (a) He paid New York City and State taxes on all employment income;

   (b) Almost all of the work related meetings that he had with his supervisors were held at a Breitling location in New York City;

   (c) The meeting at which plaintiff's employment was terminated was held in New York City;

   (d) His sales material was maintained at his home office;

   (e) He maintained and garaged a car, leased by Breitling, in New York City;

15. In 1992, plaintiff was promoted to Northeast Regional Sales Representative and was assigned to an area from Maine to Richmond, Virginia.

16. As a sales representative, plaintiff received a base salary plus bonus. The bonus was based on achievement of sales goals.

17. Plaintiff continued to perform the function of Training Manager for about two years, while he also performed his duties as the Northeast Regional sales representative.

18. Over the next 15 years Plaintiff was one of the leading sales reps. His production was outstanding and bonuses substantial.

19. Plaintiff was one of the employees who helped build Breitling into the iconic Brand in the U.S. that it is today. He played a not insignificant role in growing the brand from about $2–4 million to over $100 million in U.S. sales per year.

20. In recognition of his outstanding production, by 2010 plaintiff's salary was increased to $230,000.

21. On information and belief, plaintiff's sales figures were higher than any other sales representative for almost every year until 2012.

22. From 2002 through 2008, plaintiff always met budget and outperformed his prior year sales.

23. The recession hit Breitling USA sales in 2008 and 2009, where its sales decreased by close to $40 million in each year. As a consequence, no sales rep met his goals.

24. Despite the continued bad economy, in 2010 plaintiff increased his sales over the past year by 40% and was 94% of his sales goals.

25. In 2010 four (4) of the other sales reps had far lower production rates than plaintiff.

26. In about October 2010, Thierry Prissert ("Prissert") was hired as the new President of Breitling USA. He assumed his full responsibilities in January of 2011.

27. It was with Prissert's appointment that plaintiff began being harassed, treated differently than the other men on the sales team, and undermined in his work.

28. Prissert, by his actions, made it clear that he expected stereotypical male behavior. He gave preference to stereotypical straight men with sports backgrounds. For example:

    (a) Prissert would regularly engage in sports talk with the male reps in the office, but never included plaintiff or the female reps.

    (b) Prissert invited all of the male reps to his new New York apartment, but did not invite plaintiff or any of the female reps.

29. Because plaintiff is gay, he was treated with the same disdain as were the female staff members. For example:

   (a) In June 2013, all of the experienced male sales reps, except for plaintiff, were invited to the prestigious marketing event held with Bentley cars in Crew, England. No female sales reps were invited;

   (b) In July 2011 and July 2012 there was a marketing event in Bouchs, Switzerland at which Brietling entertained its best clients. Two male reps were invited to escort the clients, while plaintiff was not, even though some of his largest clients were in attendance.

   (c) Plaintiff, along with the female reps, was not invited to networking events such as golf outings at which clients were entertained.

   (d) There is an annual trip to Basel, Switzerland. Because of the limitation of hotel rooms, reps had to share. Plaintiff was assigned to share a room with a married female rep, Annie Sommer, rather than being assigned a single room or to share with a male partner.

30. In January 2013, Mr. Prissert promoted Isaac Schafrath (Schafrath"), who was about 33 years old at the time, to sales representative and gave him part of plaintiff's territory.

31. For the six (6) prior years prior to promotion, Schafrath had been Manager of the Vault where Breitling kept its valuable watches. As such, Schafrath was primarily responsible for securing the property and filling orders.

32. On information and belief, at the time of his promotion, Schafrath had no previous sales experience.

33. Schafrath fulfilled the ideal man's man that Mr. Prissert prized: not only was he married, but he had been a star lacrosse player while at college, and his father, Dick Schafrath, was a star football player at Ohio State University and a former NFL player.

34. At the time of the reduction of his territory, Prissert lowered plaintiff's salary

from $230,000 to $196,000. Since his bonus base was also lowered, his total compensation was significantly reduced.

35.  At the same time, sales representative, Annie Sommer had part of her territory redistributed. Her salary was also reduced from $195,000 to $165,000.

36.  At the same time, Schafrath was given Virginia as part of his territory. That territory was previously serviced by Patrick Cawthorne. ("Cawthorne")

37.  On information and belief, Cawthorne's salary, at that time was about $210,000.

38.  Cawthorne's salary was not reduced at the time Schafrath was given Virginia.

39.  In 2013 not one of the sales reps made budget.

40.  In 2013 at least two of the eight (8) sales reps had lower sales production than plaintiff.

41.  On December 17, 2013, plaintiff was called to a meeting in New York City with Prissert and Sebastien Amstutz, Vice President of Finance, and told that he was being terminated effective December 31, 2013. He was removed from work effective immediately.

42.  On information and belief, plaintiff's territory was redistributed between Schafrath and one of the female reps, Annie Sommer.

43.  No other sales reps were terminated at the time.

### FIRST CAUSE OF ACTION
### (Title VII)

44.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth herein.

45.  Defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his gender in violation of Title VII.

46. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### (ADEA)

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth herein.

48. Defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his age, in violation of the ADEA.

49. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
### (State HRL)

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth herein.

51. Defendant has discriminated against plaintiff in the terms and conditions of employment on the basis of his sexual orientation and age in violation of § 296 of the New York State Human Rights Law.

52. As a result of defendants' discriminatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION
## (City HRL)

53. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth herein.

54. Defendant has discriminated against plaintiff in the terms and conditions of employment on the basis of his sexual orientation and age in violation of the New City Human Rights Law, Administrative Code, § 8-101, *et seq.*

55. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that this Court enter a judgment:

A. Declaring that the acts and practices complained of herein are in violation of Title VII; the ADEA; the New York State Human Rights Law § 296, *et seq.*; and the New York City Administrative Code Section 8-101, *et seq.*

B. Enjoining and permanently restraining these violations;

C. Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

D. Awarding plaintiff lost wages and fringe benefits together with pre-judgment interest for violation of the Title VII, the ADEA and the City and State HRLs;

E. Awarding plaintiff compensatory damages for mental anguish and humiliation;

      F.    Awarding plaintiff punitive damages;

      G.    Awarding plaintiff liquidated damages;

      H.    Awarding plaintiff the costs of this action, including reasonable attorneys' fee;

      I.    Granting such other and further relief as this Court deems necessary and proper.

Dated: February 10, 2015
       New York, New York

Respectfully submitted,

**LAW OFFICES OF JANICE GOODMAN**

By: _____
Janice Goodman (0487)
Attorney for Plaintiff
350 Seventh Avenue, Suite 1800
New York, New York 10001
Telephone: (212) 869-1940
Facsimile: (212) 419-1510
E-mail: jg@janicegoodmanlaw.com