UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

FREDERICK M. CARGIAN,

                              Plaintiff,                    Civil Action No.:
                                                           15-CV-01084(GBD)(HBP)
                 -against-

BREITLING USA INC.,

                              Defendant.

--------------------------------------------------------x

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Glenn S. Grindlinger
Zev Singer
Fox Rothschild LLP
100 Park Avenue
Suite 1500
New York, New York  10017
Tel: 212.878.7900
Fax: 212.692.0940

*Attorneys for Breitling USA*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT..........................................................................................................3

    I    LEGAL STANDARD FOR A *PRIMA FACIE* CASE OF DISCRIMINATION ......................3

    II.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION..........4

        A.   Plaintiff's Title VII Gender Discrimination Claim
            Fails as a Matter of Law ....................................................................5

        B.   Plaintiff Cannot Establish a *Prima Facie* Case of Age Discrimination...........9

        C.   Plaintiff Cannot Establish a *Prima Facie* Case of Sexual
            Orientation Discrimination Under the SHRL or the CHRL..........................13

    III.  BRIETLING HAS ARTICULATED LEGITIMATE, NON-DISCRIMINATORY
         REASONS FOR ITS ACTIONS ................................................................17

    IV.  PLAINTIFF CANNOT ESTABLISH PRETEXT ...........................................21

CONCLUSION ..................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*,
    374 F.3d 66 (2d Cir.2004) ........................................................................ 13

*Austin v. Ford Models, Inc.*,
    149 F.3d 148 (2d Cir. 1998) ..................................................................... 3

*Back v. Hastings on Hudson Union Free School District*,
    365 F.3d 107 (2d Cir. 2004) ..................................................................... 8

*Bennett v Health Mgt. Sys., Inc.*,
    92 A.D.3d 29 (1st Dep't 2011) ................................................................. 3

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999) ..................................................................... 17

*Brannigan v. Bd. of Educ. of Levittown Union Free Sch. Dist.*,
    18 A.D.3d 787, 796 N.Y.S.2d 690 (2005) ................................................ 13

*Burlington Indus. V. Ellerth*,
    524 U.S. 742 (1998) ................................................................................. 5

*Byrnie v. Town of Cromwell Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001) .................................................................4, 21, 22

*Campbell v. Alliance Nat'l Inc.*,
    107 F.Supp.2d 234 (S.D.N.Y. 2000) ........................................................ 11

*Campbell v. Cellco P'ship*,
    860 F.Supp.2d 284 (S.D.N.Y. 2012) ........................................................ 13

*Caronia v. Hustedt Chevrolet*,
    2009 WL 909729 (E.D.N.Y. 2009) ........................................................... 12

*Danzer v. Norden Systems, Inc.*,
    151 F.3d 50 (2d Cir. 1998) ....................................................................... 11

*Dawson v. Bumble & Bumble*,
    398 F.3d 211 (2d Cir. 2005) ................................................................. *passim*

*Del Franco v. New York City Off-Track Betting Corp.*,
    429 F. Supp. 2d 529 (E.D.N.Y. 2006) ...................................................... 11

*Dixon v. Int'l Fed'n of Accountants*,
    416 Fed. Appx. 107 (2d Cir. 2011) ........................................................... 11

*Forrest v. Jewish Guild for the Blind*,
  3 N.Y.3d 295 (2004) ........................................................................................................ 3

*Galabya v. N.Y. City Bd. of Educ.*,
  202 F.3d 636 (2d Cir. 2000) ............................................................................................ 4

*Gallo v. Prudential Residential Servs., L.P.*,
  22 F.3d 1219 (2d Cir. 1994) .......................................................................................... 21

*Garber v. New York City Police Department*,
  1997 U.S. Dist. LEXIS 12590 (S.D.N.Y. 1997), *aff'd,* 1998 U.S. App. LEXIS 20181 ...................... 4

*Garrett v. Garden City Hotel, Inc.*,
  No. 05-0962, 2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. 2007) .......................................... 14

*Getler v. Cornell Weill University Medical College Dept. of Surgery*,
  2007 WL 38276 (S.D.N.Y. 2007) ................................................................................ 12

*Golden Pac. Bancorp v. FDIC*,
  375 F.3d 196 (2d Cir. 2004) .......................................................................................... 17

*Hawana v. City of N.Y.*,
  230 F. Supp. 2d 518 (S.D.N.Y. 2002) .......................................................................... 17

*Holowecki v. Federal Exp. Corp.*,
  644 F.Supp.2d 338 (S.D.N.Y. 2009) ............................................................................ 12

*Islamic Soc'y of Fire Dep't Pers. v. City of New York*,
  205 F. Supp. 2d 75 (E.D.N.Y. 2002) .............................................................................. 4

*James v. N.Y. Racing Ass'n*,
  233 F.3d 149 (2d Cir. 2000) ...................................................................................... 4, 21

*Johnson v. Andy Frain Services, Inc.*,
  No. 15-1143, 2016 WL 210098 (2d Cir. 2016) .............................................................. 9

*Johnson v. County of Nassau*,
  480 F. Supp. 2d 581 (E.D.N.Y. 2007) .......................................................................... 11

*Kulak v. City of N.Y.*,
  88 F.3d 63 (2d Cir. 1996) .............................................................................................. 15

*Lane v. Collins & Aikman Floor Coverings, Inc.*,
  No. 00-3241, 2001 WL 1338918 (S.D.N.Y. 2001) ...................................................... 16

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ...................................................................................................... 15

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ........................................................................................................ 3

*Mendez-Nouel v. Gucci America, Inc.*,
  542 Fed.Appx. 12 (2d Cir. 2013) ................................................................ 16

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) .................................................................. 3, 13

*Moccio v. Cornell University*,
  889 F. Supp. 2d 539 (S.D.N.Y. 2012) ......................................................... 15

*Obinabo v. Radioshack Corp.*,
  522 F. Appx. 55 (2d Cir. 2013)................................................................. 11

*Ochei v. All Care / Onward Healthcare*,
  No. 07 Civ. 0968, 2009 U.S. Dist. LEXIS 28993 at *29 (S.D.N.Y. 2009) ....................... 10, 14

*Patterson v. CBS, Inc.*,
  No. 94-2562, 2000 WL 666337 (S.D.N.Y. 2000) ................................................ 16

*Paulose v. New York City Department of Education*,
  No. 05-9353, 2007 U.S. Dist. LEXIS 34146 (S.D.N.Y. 2007) ................................... 14

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989) .......................................................................... 6

*Robinson v. Zurich N. Am. Ins. Co.*,
  892 F. Supp. 2d 409 (E.D.N.Y. 2012) ......................................................... 23

*Rodriguez v. City of N.Y.*,
  644 F. Supp. 2d 168 (E.D.N.Y. 2008) ......................................................... 23

*Sarmiento v. Queens Coll.*,
  386 F. Supp. 2d 93 (E.D.N.Y. 2005) .......................................................... 22

*Scott v. Coughlin*,
  344 F.3d 282 (2d Cir. 2003) .............................................................. 12, 17

*Simmons v. Akin Gump Strauss Hauer & Feld, LLP*,
  508 F. App'x 10 (2d Cir. 2013)............................................................... 13

*Simonton v. Runyon*,
  232 F.3d 33 (2d Cir. 2000) ................................................................ 5, 8

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993).......................................................................... 3

*Stern v. Trs. of Columbia Univ.*,
  131 F.3d 305 (2d Cir. 1997) ................................................................. 3

*Tomassi v. Insignia Fin. Grp., Inc.*,
  478 F.3d 111 (2d Cir. 2007) ................................................................ 13

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) ................................................................................... 10

*Vuona v. Merril Lynch & Co.*,
    919 F.Supp. 2d 359 (S.D.N.Y. 2013) ................................................................... 15

*Williams v. New York City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) ............................................................................... 3

*Wyatt v. Zuckerman.*,
    2005 U.S. Dist. LEXIS 3300 (S.D.N.Y. 2005) ..................................................... 4

**Statutes**

Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (ADEA) .................................... *passim*

Title VII of the Civil Rights Act of 1964 (Title VII) ........................................................ *passim*

State Human Rights Law, Executive Law § 296 *et seq.* (SHRL) .................................... 1, 3, 6, 13

New York City Administrative Code § 8-107 *et seq.* (CHRL) ........................................ *passim*

**Other Authorities**

Rule 56 of the Federal Rules of Civil Procedure ........................................................................ 1

## PRELIMINARY STATEMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Breitling USA, Inc. ("Breitling") submits this memorandum of law in support of its Motion for Summary Judgment to dismiss all of the claims set forth in the Complaint of Plaintiff Fred Cargian ("Plaintiff" or "Cargian").

Breitling employed Plaintiff as a sales representative until it terminated his employment effective December 31, 2013.  Claiming that Breitling violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), New York State Human Rights Law, Executive Law § 296 *et seq.* ("SHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq.* ("CHRL"), Plaintiff, who identifies as a gay man, alleges that he was treated less favorably than the other non-gay, younger sales representatives, and that because he is not a "stereotypical male" sports fan, was the subject of gender stereotyping.  Plaintiff alleges that because of his age, gender, and sexual orientation, Breitling reassigned some of his sales territory to a younger and heterosexual male during Plaintiff's last year of employment with Breitling, reduced his salary, and ultimately terminated his employment.

Plaintiff's claims are wholly without merit.  He cannot demonstrate a *prima facie* case of discrimination, much less demonstrate that Breitling's legitimate business reasons are pretext for discrimination.  Indeed, there is simply no evidence that Breitling or any agent of Breitling treated Plaintiff differently or adversely because of his age, sexual orientation, or the fact that he is not a "stereotypical male."

As a sales representative, Plaintiff's most important responsibility was to increase sales in his region and otherwise achieve sales goals.  During the last few years of employment with

Breitling, Plaintiff failed in this responsibility.  In fact, not only did Plaintiff fail to achieve his sales goals during his last few years of employment, his sales actually decreased, even when changes to his territory are taken into account.  Breitling warned Plaintiff on numerous occasions that if his performance did not improve, his employment would be adversely affected.  Breitling offered him suggestions on how he could improve his performance.  Plaintiff did not heed these warnings nor respond to the suggestions.  Thus, it is because of his declining performance and not any protected characteristic that Breitling eventually terminated Plaintiff's employment.

Further, during his last few years of employment, Plaintiff had an extremely negative attitude towards his job and his boss.  He consistently refused to acknowledge any negative feedback that he received.  He cursed at his boss, made sarcastic comments in public about his work, and claimed that despite his declining sales performance he knew how to do his job and needed no guidance.  No other sales representative acted with such disdain for Breitling's senior management.  Again, Breitling warned Plaintiff about his negative attitude on several occasions and again Plaintiff refused to acknowledge that he needed to improve or change.  This negative attitude contributed to Breitling's decision to terminate Plaintiff's employment and it had nothing to do with Plaintiff's age, sexual orientation, or gender stereotyping.

Accordingly, the Court should grant summary judgment to Breitling on all of Plaintiff's claims and dismiss Plaintiff's Complaint.

## STATEMENT OF FACTS

The Court is respectfully referred to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, dated February 29, 2016 ("Def's 56.1"), the Declaration of Zev Singer, dated February 29, 2016 ("Singer Decl."), the Declaration of Thierry Prissert dated February 29, 2016 ("Prissert Decl.") annexed as Exhibit "B" to the Singer Decl., the Declaration

of Charles Anderson dated February 29, 2016 ("Anderson Decl.") annexed as Exhibit "B" to the Singer Decl., and the supporting evidence cited to therein for a statement of pertinent and material facts.

## ARGUMENT

## I.   LEGAL STANDARD FOR A *PRIMA FACIE* CASE OF DISCRIMINATION

To state a *prima facie* case of employment discrimination under Title VII, the ADEA, the SHRL, and the CHRL, a plaintiff must allege that he suffered an adverse employment action under circumstances giving rise to an inference of intentional discrimination based upon plaintiff's membership in a protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 311-12 (2d Cir. 1997); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998) (noting that ADEA and Title VII claims are analyzed under the same legal framework); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004) (noting that courts should use the *McDonnell Douglas* framework for analyzing claims under the SHLR); *Bennett v Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 45 (1st Dep't 2011) (noting that courts should use the *McDonnell Douglas* framework for analyzing claims under the CHRL[1]).  If a plaintiff meets this burden of production, then the burden shifts to the defendant to show that any adverse employment action was taken for legitimate, non-discriminatory reasons. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).  Once the defendant produces such evidence, "the presumption raised by the *prima facie* case is rebutted, and drops from the

---

[1]   As will be discussed below, while claims under the CHRL may also follow the burden-shifting *McDonnel Douglas* framework, the CHLR now "mandates that courts be sensitive to the distinctive language, purposes, and method of analysis required by the [CHRL] requiring an analysis more stringent than that called for under with Title VII or the [SHRL]," *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 65-66 (1st Dep't 2009); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (directing Courts to undertake a separate and independent analysis of CHRL claims).

case." *Id.* at 511.  At that point, "the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred," and plaintiff must then prove that the proffered reasons are pretext for discrimination. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).   Indeed, a plaintiff in a discrimination lawsuit is required to prove discrimination, not to simply provide a difference of opinion. *See Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001).

Here, Plaintiff fails to state a *prima facie* case of gender, age, or sexual orientation discrimination because he cannot demonstrate that any actions taken with regard to his employment were based upon his membership in those protected classes.  Furthermore, Plaintiff is unable to demonstrate that Breitling's legitimate business reasons are mere pretext for discrimination.  Accordingly, Plaintiffs claims should be dismissed.

## II.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION

Under the law in this Circuit, an adverse employment action is a "materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities" such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000); *Garber v. New York City Police Department,* 1997 U.S. Dist. LEXIS 12590 (S.D.N.Y. 1997), *aff'd,* 1998 U.S. App. LEXIS 20181 (unhappiness and dissatisfaction does not support a claim of adverse employment action). *Wyatt v. Zuckerman.,* 2005 U.S. Dist. LEXIS 3300 (S.D.N.Y. 2005).  "[A] plaintiff's subjective feelings cannot be used to determine whether an employment action is 'adverse'." *See Islamic Soc'y of Fire Dep't Pers. v. City of New York,* 205 F. Supp. 2d

75, 84 (E.D.N.Y. 2002). Furthermore, a "bruised ego," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or materially adverse employment action). *See Burlington Indus. V. Ellerth,* 524 U.S. 742, 761 (1998). Therefore, here, the only conceivable adverse employment actions taken by Breitling against Plaintiff are: (1) Breitling's reduction of Plaintiff's salary at the end of 2012/beginning of 2013 after a portion of Plaintiff's sales territory was reassigned to Isaac Schafrath, the newly promoted sales representative; and (2) Breitling's termination of Plaintiff's employment in December 2013.[2]

Notwithstanding the fact that Plaintiff is a member of protected classes and that Breitling took these two adverse employment actions against him, Plaintiff cannot demonstrate a causal connection between his gender, age, or sexual orientation, and the adverse employment actions he suffered.  Indeed, Plaintiff offers nothing but conclusory and speculative assertions that his salary reduction and ultimate termination must have been based upon discriminatory reasons, which is insufficient to defeat summary judgment.  As such, Plaintiffs claims should be dismissed and the instant motion granted.

### A.    Plaintiff's Title VII Gender Discrimination Claim Fails as a Matter of Law

Title VII protects a limited class of persons from discrimination, including individuals who are discriminated on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In this Circuit, it is well-settled that sexual orientation is not a protected class under Title VII.  *See Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) (reviewing legislative history and holding sexual orientation discrimination claim is not cognizable under Title VII); *Dawson v. Bumble & Bumble,* 398 F.3d 211, 217-18 (2d Cir. 2005) ("[T]o the extent that [plaintiff] is alleging discrimination based upon her lesbianism, [plaintiff] cannot satisfy the first element of a *prima facie* case under Title VII because the statute does not recognize

---

[2]   Breitling does not contest that Plaintiff is a member of protected classes (over 40 years old and a gay man)

homosexuals as a protected class."). Therefore, to the extent Plaintiff's claim under Title VII is that of sexual orientation discrimination, no cognizable claim exists and any such claim should be dismissed.

A plaintiff may bring a claim under Title VII for gender stereotyping. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 251-52 (1989); *Dawson,* 398 F.3d at 218. However, a plaintiff may not use a gender stereotyping claim to "bootstrap protection for sexual orientation into Title VII." *Dawson,* 398 F.3d at 218 (quoting *Simonton,* 232 F.3d at 38). Here, Plaintiff is doing just that -- using a claim for gender stereotyping to bootstrap sexual orientation[3] into Title VII protection. This is not permitted and therefore this claim should be dismissed.

Plaintiff cannot show that his gender played any role in the decision by Breitling to reduce his salary or to ultimately terminate his employment. In the complaint and at deposition, Plaintiff asserts that the evidence that Breitling gender stereotyped him includes: (1) Thierry Prissert, the President of Breitling who was hired in 2010, gave preferential treatment to stereotypical straight men with "sports backgrounds" by regularly engaging in sports talk with male sales representatives to the exclusion of Plaintiff; (2) Mr. Prissert's alleged invitation to his apartment of male representatives without having invited Plaintiff or any of the female representatives; and (3) that in January 2013, Mr. Prissert promoted Isaac Schafrath, an "ideal man's man that Mr. Prissert prized" because he was married, a star lacrosse player in college, and his father was a former professional football player, to sales representative and gave him part of Plaintiff's territory. *See* Complaint at ¶¶ 26-28, 30-34, Exhibit A[4].

---

[3]   As will be discussed below, Breitling submits that Plaintiff's sexual orientation discrimination claims under the SHRL and the CHRL also fail.

[4]   Unless otherwise indicated, all references to Exhibits are to those annexed to the Declaration of Zev Singer in Support of Motion for Summary Judgment, dated February 29, 2016 ("Singer Decl."). .

These allegations cannot sustain a claim for gender stereotyping under Title VII.  As an initial matter, other than Plaintiff's unsupported allegation, there is absolutely no evidence that Mr. Prissert invited any male sales representatives to his New York apartment to the exclusion of others.  On one occasion, two, male sales representatives, who were accompanying Mr. Prissert to a client dinner, went to Mr. Prissert's apartment for a matter of minutes to wait for him while Mr. Prissert put his children to bed.  *See* Prissert Decl., Exhibit B, at ¶ 53.  Other than this isolated occurrence, no sales representative – male or female – has been to Mr. Prissert's apartment.  *See id.*  Furthermore, even if Mr. Prissert invited the male sales representatives to his apartment and not Plaintiff, Plaintiff cannot link this fact to a colorable Title VII claim based on gender stereotyping or sex or show how this invitation related in any way to the reduction of his salary or his termination.

The remainder of Plaintiff's purported evidence that he claims supports his gender stereotyping claim concerns his allegation that Plaintiff was excluded from sports conversations and that that when Mr. Schafrath was promoted to sales representative, he was given a portion of Plaintiff's territory.  The Second Circuit in *Dawson* has explained that "[g]enerally speaking, one can fail to conform to gender stereotypes in two ways: (1) through behavior or (2) through appearance." *Dawson,* 398 F.3d at  221.  Here, Plaintiff does not make any allegations with respect to his appearance, thus his claim of gender stereotyping relies on the theory that he was treated differently because of his behavior not conforming to gender stereotypes.  In essence, Plaintiff claims that he has a valid gender stereotyping claim because he was treated differently (and had his salary reduced and was terminated) because he was not a sports fan.

Even if true Mr. Prissert excluded Plaintiff from conversations or treated him differently because he is not a sports fan, this allegation is not sufficient evidence to establish a *prima facie*

case of gender stereotyping under Title VII.  Indeed, being a sports fan or having an interest in sports is a *hobby* that is not, in and of itself, a stereotypical notion about how men and women behave.  Although Plaintiff makes the conclusory claim that Mr. Prissert made assumptions about him informed by gender stereotypes of what men should talk about (sports), he does not state *how* these assumptions resulted in the adverse employment decisions to reduce his salary or to terminate his employment.  Nor does he make any other specific gender allegations other than his non-interest in sports.  Plaintiff does not assert that there was any derogatory statement or comment made to him about his gender by Mr. Prissert; rather, he only asserts that he was treated differently because he was not a sports fan. This is in stark contrast to the plaintiff in *Back v. Hastings on Hudson Union Free School District,* 365 F.3d 107 (2d Cir. 2004), who demonstrated a triable issue of fact as to whether her superiors felt that her continued employment violated gender stereotypes because of explicit comments that they made regarding her child care arrangements and her commitments to her children at home.  Here, Plaintiff cannot demonstrate that not being a sports fan relates to an alleged failure to conform his behavior to masculine stereotypes, resulting in his suffering any adverse employment action at the hands of Breitling. *See Dawson v. Bumble & Bumble,* 398 F.3d 211, 217-18 (2d Cir. 2005) (plaintiff produced no evidence from which the Court could plausibly infer that her alleged failure to conform her appearance to feminine stereotypes resulted in her suffering any adverse employment action at the hands of the employer); *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) ("[W]e have no basis in the record to surmise that [plaintiff] behaved in a stereotypically feminine manner and that the harassment he endured was, in fact, based on his non-conformity with gender norms instead of his sexual orientation.").

8

Further, Plaintiff himself conflates his gender stereotyping claim with his sexual orientation claim. When asked at his deposition how Chuck Anderson, Plaintiff's immediate supervisor, discriminated against him on the basis of his *sexual orientation*, Plaintiff included in his answer "[t]hey would talk sports, and when I came over they would stop, and Mr. Anderson would walk away, or Mr. Prissert, so I was excluded from." *See* Plaintiff's Deposition, Exhibit D, at 270:19-271:4. Plaintiff uses the exact same facts to support his gender claim as he uses to support his sexual orientation claim. Furthermore, in the Complaint itself, Plaintiff asserts that "[b]ecause plaintiff is gay, he was treated with the same disdain as were the female staff members." *See* Complaint, Exhibit A at ¶29. In the very same sentence, Plaintiff alleges that it was because he was *gay* that he was treated like a *female*. This is a clear conflation of his gender and sexual orientation claims and the exact scenario that the Second Circuit stated does not create a Title VII claim for gender stereotyping, and that plaintiffs may not use a gender stereotyping to bootstrap protection for sexual orientation into Title VII. *See Dawson*, 398 F.3d at 218, citing *Lex K. Larson, 10 Employment Discrimination § 168.10[1]* (2d ed. 2003) ( "It is not uncommon for plaintiffs to fall short in their Title VII pursuits because courts find their arguments to be sexual orientation (or other unprotected) allegations masquerading as gender stereotyping claims."). Not only has Plaintiff conflated his sexual orientation discrimination claims with gender claims in an effort to bootstrap Title VII protection, but he has simply failed to allege facts or evidence sufficient to support a *prima facie* case of gender stereotyping under Title VII. Accordingly, Plaintiff's gender and gender stereotyping claims must be dismissed.

## B.     Plaintiff Cannot Establish a *Prima Facie* Case of Age Discrimination

To sustain a claim for age discrimination under the ADEA, a plaintiff not only has to show that he suffered an adverse action under circumstances giving rise to intentional discrimination, but also that age discrimination was the "but for cause" of the employer's

adverse action.  *See Johnson v. Andy Frain Services, Inc.*, No. 15-1143, 2016 WL 210098, at *1 (2d Cir. 2016) (finding no claim under the ADEA because plaintiff failed to provide facts to show that her age was "but-for" cause of her harassment and discharge); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (same).  Here, Plaintiff cannot show that his age played any role whatsoever in the employment decisions made by Breitling (his reduction of salary and his termination), and therefore he cannot establish a *prima facie* case of age discrimination under the ADEA.

Plaintiff's sole allegation in the complaint that is even arguably related to age discrimination is a reference that at the time he was promoted to sales representative in 2013, Mr. Schafrath was "about 33 years old," and when he was promoted Mr. Schafrath was given part of Plaintiff's sales territory.  *See* Complaint, Exhibit A, at ¶ 30.  Other than this veiled reference to age, the complaint itself has no other factual allegations whatsoever regarding Plaintiff's claims of age discrimination.  Indeed, Plaintiff's conclusory and "mere unsupported speculation" that he was discriminated against on the basis of his age is wholly insufficient to meet his *prima facie* burden.  *See Ochei v. All Care / Onward Healthcare*, No. 07 Civ. 0968, 2009 U.S. Dist. LEXIS 28993 at *29 (S.D.N.Y. 2009) (allegation that plaintiff was not hired permanently due to discriminatory reasons was "unsupported speculation," thus summary judgment was granted).

At deposition, Plaintiff alleged that Mr. Anderson, made one single joke regarding Plaintiff's age.  *See* Def's 56.1 at ¶ 150.   Plaintiff claims that on one occasion, in Las Vegas at a sales show on an unknown date, Mr. Anderson joked "you're so old, you probably can't remember that."  *Id.*   Other than this instance, Plaintiff points to no other comments, statements, or jokes made to him about his age while he was employed at Breitling.  In addition, Plaintiff specifically testified that Mr. Prissert, the President of Breitling and the individual who made the

decision to reduce Plaintiff's salary and later terminate his employment, *never* made any comments about Plaintiff's age.  Def's 56.1 at ¶ 147.

In any event, with regard to the alleged joke by Mr. Anderson, stray comments of this variety do not create an inference of discrimination.  *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."); *see also Dixon v. Int'l Fed'n of Accountants*, 416 Fed. Appx. 107, 110 (2d Cir. 2011) (same).  In determining whether a remark is probative or not of discrimination, courts consider four factors: who made the remark; when the remark was made in relation to the employment decision; the remark's content; and the context in which the remark was made.  *See Obinabo v. Radioshack Corp.*, 522 F. Appx. 55, 57 (2d Cir. 2013).  Here, there is absolutely no evidence to establish a nexus between Anderson's alleged single joke and the progressive criticism of Plaintiff's performance and resulting termination.  *See Del Franco v. New York City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 537 (E.D.N.Y. 2006) (discriminatory remarks were "insufficient evidence from which discriminatory animus [could] be inferred" because, among other things, the alleged remarks were unrelated to the defendant's decision to discharge the plaintiff); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 599-600 (E.D.N.Y. 2007) (a comment by plaintiff's supervisor was a "stray remark" that was "insufficient to raise an inference of discrimination because there [was] no nexus between his remark and any of the alleged adverse acts").  Furthermore, Mr. Anderson was not even the decision-maker with regard to the adverse actions suffered by Plaintiff; Mr. Prissert made the decision to reduce Plaintiff's salary and to terminate Plaintiff from Breitling.  Def's 56.1 at ¶¶ 133, 158.  Yet, Plaintiff testified that Mr. Prissert never made any age related comments to Plaintiff.  Def's 56.1 at ¶ 147.  Generally, stray remarks by non-decision makers (or

11

even by decision makers but unrelated to the decision process) "are rarely given great weight…". *Campbell v. Alliance Nat'l Inc.,* 107 F.Supp.2d 234, 247 (S.D.N.Y. 2000).   Under these circumstances, a single stray and offhand joke made by a non-decision maker certainly does not give rise to an inference of discrimination regarding Plaintiff's employment.

Further undercutting Plaintiff's age discrimination claim is the fact that at the time that Breitling terminated Plaintiff's employment in December 2013, 6 out of the 7 other sales representatives who held the same title and position as Plaintiff and *were above 40 years old* and therefore were in the protected class of the ADEA.  *See* Def's 56.1 at ¶ 160.  Courts in this circuit have held that where employees holding the same position as a plaintiff are in the same protected class and did not experience the same alleged discriminatory treatment as the plaintiff, such facts bely a plaintiff's claim for discrimination.  *See Holowecki v. Federal Exp. Corp.*, 644 F.Supp.2d 338, 357 (S.D.N.Y. 2009) (rebutting plaintiff's age discrimination claim by demonstrating that other employees similarly situated in protected class did not experience decline in hours like plaintiff); *Caronia v. Hustedt Chevrolet*, 2009 WL 909729 (E.D.N.Y. 2009) (noting that the mere fact that plaintiff was the only employee to receive a pay cut failed to raise an inference of age discrimination, as plaintiff failed to provide evidence regarding whether other employees were outside of protected class).  In addition, Mr. Prissert, was 45 years old at the time he made the decision to terminate Plaintff.  *See* Def's 56.1 at ¶ 159.  This also contradicts Plaintiff's claims, as a decision maker being within the protected class undermines a claim for age discrimination.  *Getler v. Cornell Weill University Medical College Dept. of Surgery,* 2007 WL 38276, at *12 (S.D.N.Y. 2007) (decision makers both being over 40 undermined Plaintiff's claim of age discrimination) .

Plaintiff's claims for age discrimination are wholly conclusory.  He has failed to demonstrate any causal connection between his age and the adverse employment actions taken against him that would establish a *prima facie* case of age discrimination.  *See Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("[c]onclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment").  Accordingly, Plaintiff's age discrimination claims should be dismissed[5].

### C.   Plaintiff Cannot Establish a *Prima Facie* Case of Sexual Orientation Discrimination Under the SHRL or the CHRL

Plaintiff's claims for sexual orientation discrimination under the SHRL and the CHRL also fail, because his allegations are solely conclusory and he cannot establish a *prima facie* case. To establish a *prima facie* case of sexual orientation discrimination under either the SHRL or CHRL, a plaintiff must demonstrate the following: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP,* 508 F. App'x 10, 12 (2d Cir. 2013) (noting the general elements for discrimination under SHRL); *Campbell v. Cellco*

---

[5]   For the same reasons that Plaintiff's ADEA claim should be dismissed, his claim for age discrimination under the SHRL should also be dismissed.  *See Tomassi v. Insignia Fin. Grp., Inc.,* 478 F.3d 111, 114  (2d Cir. 2007) (age discrimination claims under the ADEA and the SHRL are analyzed under the same standard); *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 71 n. 2 (2d Cir.2004) ("Since the [NYSHRL] mirrors the requirements of the ADEA, violation of one necessarily implies violation of the other."); *Brannigan v. Bd. of Educ. of Levittown Union Free Sch. Dist.*, 18 A.D.3d 787, 796 N.Y.S.2d 690, 692 (2005) ("The elements of an age discrimination claim under the New York State Human Rights Law and the ADEA are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes.")

Further, even under the stricter CHRL standard, Plaintiff has utterly failed to establish a *prima facie* case for age discrimination as he points to no specific facts that support his claim that his salary was reduced or he was terminated because of his age, other than the single stray joke made by Mr. Anderson and his conclusory allegation that a younger man was given some of his territory for discriminatory reasons.  *See Mihalik v. Credit Agricole Cheuvreux North America Inc.,* 715 F.3d 102, 110 n. 8 (2d Cir.2013) (noting that under the CHRL summary judgment is appropriate if "the record establishes as a matter of law that discrimination play[ed] no role" in employer's actions).

*P'ship,* 860 F.Supp.2d 284, 297 (S.D.N.Y. 2012) (appropriate to use Title VII elements "as a guide" in analogous CHRL claims, though the latter are to be construed more liberally).  Again, Breitling does not contest that Plaintiff was within the protected class (gay man) or that certain adverse actions occurred (*i.e.*, his salary reduction and termination).  However, Plaintiff cannot show that the salary reduction or his termination occurred under circumstances giving rise to an inference of discrimination.  Plaintiff offers nothing but conclusory and speculative assertions that these actions were taken for discriminatory reasons.

As discussed above, Plaintiff's "mere unsupported speculation" that he was discriminated against on the basis of his sexual orientation is wholly insufficient to meet his *prima facie* burden.  *See Ochei v. All Care / Onward Healthcare,* No. 07 Civ. 0968, 2009 U.S. Dist. LEXIS 28993 at *29 (S.D.N.Y. 2009).  Indeed, Plaintiff alleges no direct evidence of discrimination, nor is there any evidence in the form of remarks or actions showing animosity towards Plaintiff's sexual orientation. Plaintiff himself admits that the decision maker with regard to his termination, Mr. Prissert, made absolutely no comments regarding his sexual orientation.[6]  *See* Def's 56.1 at ¶ 148.  In the absence of any such evidence, Plaintiff cannot establish that Breitling's actions were motivated by discrimination.  *See Paulose v. New York City Department of Education,* No. 05-9353, 2007 U.S. Dist. LEXIS 34146, at *29-30 (S.D.N.Y. 2007); *Garrett v. Garden City Hotel, Inc.,* No. 05-0962, 2007 U.S. Dist. LEXIS 31106, at *49 (E.D.N.Y. 2007).

Instead, Plaintiff relies essentially on conclusory allegations that he was treated differently based upon the fact that he is gay.  *See, e.g.,* Complaint, Exhibit A, at ¶ 29.  When asked at his

---

[6]   Plaintiff does allege, as he does in relation to his age discrimination claim discussed above, that Mr. Anderson made "not many" comments/jokes about his sexual orientation, claiming that Mr. Anderson said "because you're gay you didn't get that." See Def's 56.1 ¶ 151.  However, for the same reasons Mr. Anderson's alleged stray remark regarding age is not sufficient to establish a *prima facie* case of discrimination, this joke/comment, made by a non-decision maker, is not sufficient to establish an inference of discrimination in relation to Plaintiff's termination.

deposition how he was discriminated against on the basis of his sexual orientation, Plaintiff testified that he was not invited to all events and trips that others were, had unattainable sales goals set, was excluded from sports conversations, was not invited to Mr. Prissert's apartment, and was ultimately terminated.  *See* Plaintiff's Dep., Exhibit D, at 270:19-271:4, 274:13-277:12. Such allegations are wholly conclusory in nature, as they express Plaintiff's subjective belief that actions taken toward him were made with discriminatory motives, but he cites no specific or direct evidence that these actions had anything to do with his sexual orientation.  *See Moccio v. Cornell University,* 889 F. Supp. 2d 539, 528 (S.D.N.Y. 2012) (observing that conclusory allegations are not enough to support an inference of discrimination); *see also Vuona v. Merril Lynch & Co.,* 919 F.Supp. 2d 359, 370 (S.D.N.Y. 2013) ("[C]onclusory allegations or denials cannot by themselves create a genuine issue of material fact"). The non-moving party cannot rely on mere allegations, denials, conjectures, or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See Kulak v. City of N.Y.,* 88 F.3d 63, 71 (2d Cir. 1996); *see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 902 (1990) ("'conclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact").  Plaintiff cannot do so and therefore his sexual orientation claim should be dismissed.

Plaintiff asserts that as evidence of discriminatory animus toward him on the basis of his sexual orientation, Mr. Prissert assigned him to share a room with Annie Sommer, a female sales representative, at an annual Breitling sales trip to Basel, Switzerland.  *See* Complaint, Exhibit A, at ¶ 29(d).  However, this allegation is not evidence of any discrimination against Plaintiff because *all* of the sales representatives needed to share rooms on the Switzerland trips due to a shortage of hotel rooms.  *See* Anderson Decl. at ¶ 39.  Furthermore, Plaintiff and Ms. Sommer had

in fact chosen to share a room together on occasion when they were on vacation together. *See* Def's 56.1 at ¶¶ 145-146; *see also* Email from Plaintiff to Monika Pieren, Exhibit KK. Plaintiff admitted that Ms. Sommer was a close friend of his. *See* Def's 56.1 at ¶ 142. In fact, on March 15, 2011, Plaintiff wrote an email to the head of events of Breitling, Switzerland requesting a specific kind of room for himself and Ms. Sommer for the Switzerland trip, and stating "Annie and I are rooming together this year because of the mix of men and women from the US…Annie and I have shared rooms all the years we have attended. I think this is my 18th, Annie's 17th." *See* Exhibit KK. Plaintiff and Mr. Sommer had voluntarily chosen to share rooms on some occasions, and Plaintiff stated in an email that he and Ms. Sommer had been sharing rooms for years. Therefore, even if Plaintiff and Ms. Sommer were assigned to share rooms on the Switzerland trip, this is not evidence of sexual orientation discrimination.

Courts have granted or affirmed an employer's summary judgment in cases with far more specific and less conclusory allegations of sexual orientation discrimination than this one. *See, e.g., Mendez-Nouel v. Gucci America, Inc.,* 542 Fed.Appx. 12, 13 (2d Cir. 2013) (affirming summary judgment in favor of employer on plaintiff's NYSHRL claim despite "two instances of touching, . . . workplace banter about a supervisor's sexual orientation and nightlife, and a single occasion where a supervisor told [plaintiff] he was gay but '[y]ou just don't know it.'"); *Lane v. Collins & Aikman Floor Coverings, Inc.*, No. 00-3241, 2001 WL 1338918, at *5–6 (S.D.N.Y. 2001) (granting the employer's summary judgment motion on plaintiff's NYCHRL claim despite defendants' homophobic statements and gestures including wrist dropping, lisping, role playing gay scenarios at company meeting, and making blatant comments about plaintiff's homosexuality); *Patterson v. CBS, Inc.*, No. 94-2562, 2000 WL 666337, at *8 (S.D.N.Y. 2000) (dismissing plaintiff's sexual orientation hostile work environment claim under the NYCHRL

because "the discriminatory conduct to which [plaintiff] refers are merely isolated incidents of offensive comments which did not sufficiently affect the conditions of his employment to suggest a hostile environment.")  Simply put, Plaintiff has not presented evidence to show that any of the alleged adverse actions taken by Breitling were motivated by discriminatory animus.  *See Golden Pac. Bancorp  v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful") (quoting *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998)); *Hawana v. City of N.Y.,* 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) (observing that conclusory assumptions are not enough to support an inference of discriminatory motives); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment").  Accordingly, Plaintiff's claims of sexual orientation discrimination must fail as a matter of law[7].

## III.  BREITLING HAS ARTICULATED LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ITS ACTIONS

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination – which he cannot do -- Plaintiff's claims fail because Breitling has articulated legitimate, non-discriminatory reasons for the adverse actions taken with regard to Plaintiff. Breitling's burden in this regard is minimal as it must merely provide some explanation for the actions Plaintiff alleges to be discriminatory.  *See Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 446 (2d Cir. 1999) (citation omitted).

---

[7]   Again, even under the higher CHRL standard, Plaintiff's allegations of sexual orientation are all conclusory and he cannot establish that sexual orientation discrimination played any role at all in Breitling's decision to terminate him or reduce his salary.

Breitling has articulated its legitimate and non-discriminatory reasons for Plaintiff's termination in December 2013. First, and most objectively, Mr. Prissert made the decision to terminate Plaintiff's employment because Plaintiff's sales results in his region were poor and had been below expectations for 3 straight years (both with regard to his sales as compared to his goals/budget set by Breitling as well as his sales in relation to how his territory had performed each year prior). *See* Prissert Decl. at ¶ 49. In 2011, Mr. Prissert's first full year working as President of Breitling, Plaintiff was last out of the seven sales representatives with regard to his sales as compared to the sales from the region the prior year, having only sold 5% more than in 2010. *See* Def's 56.1 at ¶¶ 99-103. He was also last out of the seven sales representative with regard to percentage of his sales goal achieved, having only met 79% of his sales goals that year. *See id.* In 2012, Plaintiff was again last out of the seven sales representatives with regard to his sales as compared to the sales from the region the prior year (selling 6.8% less than the same region the prior year), and last out of the seven sales representative with regard to percentage of his sales goal achieved (83.76%). *See* Def's 56.1 at ¶¶ 109-113. In 2013, Plaintiff's last year with Breitling, he was tied for second to last out of the seven sales representative with regard to percentage of his sales goal achieved (79%). *See* Def's 56.1 at ¶ 120.

Further, during 2012, Plaintiff received a number of performance warnings unrelated to his poor sales performance. Plaintiff was formally warned for giving cash gifts to Breitling employees who could affect his sales and he received a warning for cursing at Mr. Prissert in a public setting at a client bowling event. *See* Prissert Decl. at ¶¶ 45-47. Finally, Mr. Prissert also decided to terminate Plaintiff''s employment because he consistently exhibited negative attitude toward management and toward his work. Examples of this negative attitude included: (i) some of his sales accounts/customers having expressed to Breitling management that Plaintiff was

bitter and unhappy with his job at Breitling; (ii) Plaintiff publicly exclaimed at a meeting in front of the other sales representatives that he would only work "9 to 5"; (iii) Plaintiff regularly resisted any kind of constructive criticism and expressed that he knew how to do his job and needed no guidance or performance criticism (despite declining sales numbers); (iv) Plaintiff failed to consistently visit all of his accounts and he resisted suggestions that he should make more visits to his accounts; (v) Plaintiff wrote in a self-evaluation that he would better be suited as President of the Company; and (vi) Plaintiff resisted using new tools and methodology Breitling required him to use. *See* Prissert Decl. at ¶49 and Anderson Decl. at ¶ 41.

Breitling has also articulated its legitimate business reasons for having reduced Plaintiff's territory (and consequently his base salary) at the end of 2012/beginning of 2013, and having promoted Isaac Schafrath to sales representative, giving him a portion of Plaintiff's sales territory and a portion of Annie Sommer's sales territory. Mr. Prissert decided to split and reduce Plaintiff's and Ms. Sommer's territory respectively because neither sales representative had performed well in 2012 with regard to their sales numbers, neither had achieved their sales goals, and Mr. Prissert determined that reducing their territory for 2013 would give them a chance to succeed on a smaller territory. *See* Prissert Decl. at ¶ 35. Since he reduced their territory, Mr. Prissert determined that Breitling needed to add an additional sales representative to cover the accounts that he was removing from Plaintiff's and Ms. Sommer's territory. *See* Prissert Decl. at ¶ 38. In fact, it was Breitling's practice that there could be changes in sales territories and sales representatives could be added or taken away from the team, depending on the needs of the business. *See* Anderson Decl. at ¶ 6. This happened to Plaintiff on a number of occasions prior to Mr. Prissert's tenure. *See* Def.'s 56.1 at ¶ ¶ 10-11. Therefore, Mr. Prissert made the decision to promote Mr. Schafrath to sales representative to cover the territories that

had previously been serviced by Ms. Sommer and Plaintiff, because Mr. Schafrath had been with Breitling for many years, was performing well in his own department, knew the Breitling product and brand very well, and had expressed a desire numerous times to do something else within the company. *See* Prissert Decl. at ¶ 40.  In essence, although Mr. Schafrath did not have prior sales experience, Mr. Prissert decided to give Mr. Schafrath a chance because they preferred to promote someone internally to the position of sales representative and believed Mr. Schafrath would be successful.  *See* Prissert Decl. at ¶ 40.  Along with the reduction of territory and responsibility, Breitling determined that Plaintiff's and Ms. Sommer's salaries should be reduced because they would be covering significantly less territory than they had the year before.  *See* Prissert Decl. at ¶ 36.  The decision to reduce Plaintiff's territory was made to give him a chance to succeed; with responsibility for a smaller territory, Plaintiff would have a better chance of meeting his sales goals, and at the same time Breitling was able to give Mr. Schafrath an opportunity to advance within the company and become successful as a new sales representative.

Finally, with regard to the setting of the sales representatives' (and Plaintiff's) yearly sales goals, the general process for doing so was passed along to Mr. Prissert from the previous President of Breitling, Marie Bodman.  *See* Prissert Decl. at ¶ 18.  Generally, to determine the sales representatives' yearly sales goals, the President (in this case, Mr. Prissert) and the sales manager, Mr. Anderson, would look at the business/sales that was generated the year before in that sales representative's same territory, consider how many "doors" (accounts) there were in that territory, the trend in those doors/accounts, and the growth of new potential accounts/doors in that territory.  *See* Prissert Decl. at ¶ 19 and Anderson Decl. at ¶ 16.  Each sales representative would also generally submit their own individual proposed yearly goal for themselves, and then Mr. Prissert, with the advice of Mr. Anderson, would then set each representative's sales

goal/budget for the year, which would be written in the sales representative's yearly employment agreement and which was tied to each representative's performance assessment and bonus. Prissert Decl. at ¶¶ 12-13, 19.[8].

Accordingly, all decisions regarding Plaintiff were taken for legitimate business reasons and therefore summary judgment should be granted to Breitling.

## IV.   PLAINTIFF CANNOT ESTABLISH PRETEXT

After articulating their legitimate non-discriminatory reasons, a defendant will be entitled to summary judgment unless the plaintiff can point to evidence supporting a finding of discrimination. *See James,* 233 F.3d at 154. For a plaintiff to show that a defendant's non-discriminatory reasons are pretextual, he must show "'both that the reason was false, and that discrimination was the real reason.'" *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1225 (2d Cir. 1994) (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 515).

Plaintiff's subjective disagreement with the decision to terminate him and the basis upon which that decision was made is insufficient as a matter of law to support a claim of discrimination or to sustain his burden to show pretext. Indeed, a plaintiff in a discrimination lawsuit is required to prove discrimination, not to simply provide a difference of opinion. *See Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001). "Where an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though **partially subjective** evaluation of. . .qualifications, no inference of

---

[8]   To the extent that Plaintiff also claims as evidence that he was discriminated against on the basis of his gender or sexual orientation that he was not invited to certain events, such as the Breitling marketing event/trip held in Crewe, England, (*see* Complaint, Exhibit A, at ¶ 29(a)), those decisions were made for legitimate business purposes, such as which clients of which sales representatives were attending the trip/event, what the potential for new business was, and what relationships the sales representatives had with the clients attending the trip. *See* Prissert Decl. at ¶ 56. In fact, with regard to the 2013 trip to Crewe, where loyal Breitling customers/jewelers were taken to tour the Bentley car factory and experienced a day of aviation and being further exposed to the Breitling brand, the sales representatives that were invited were the ones with clients attending the trip with the highest potential for new Breitling/Bentley business. *See id.*

discrimination can be drawn.'" *Id.* at 105 (quoting *Lieberman v. Gant,* 630 F.2d 60, 67 (2d Cir. 1980)) (emphasis added).  In other words,

> [Title VII] only obligates Defendant to base their actions on non-discriminatory considerations. *See Gilman v. Runyon,* 865 F.Supp. 188, 193 (S.D.N.Y. 1994)("an 'employer's judgment in selecting and applying subjective criteria may be poor, and it may be erroneous' as long as it is not discriminatory")(quoting *Judge v. Marsh,* 649 F.Supp. 770, 781 (D.D.C. 1986)); *Williams v. N.Y.C. Dep't of Sanitation,* 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627, at *18 (S.D.N.Y. Sept. 28, 2001)("This Court may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom."); *Faldetta v. Lockheed Martin Corp.,* 2000 U.S. Dist. LEXIS 16216, 2000 WL 1682759, at *9-10 (S.D.N.Y. Nov. 9, 2000)("Absent evidence of discrimination, it is not the province of the Court to sit as a super-personnel department that reexamines an entity's business decisions.").

*Sarmiento v. Queens Coll.,* 386 F. Supp. 2d 93, 101 (E.D.N.Y. 2005).

Any claim Plaintiff may make that his sales performance and attitude were in fact up to par are the epitome of his own subjective disagreement with Breitling's business decisions and cannot sustain the burden of showing pretext.  Wholly undermining Plaintiff's claim of pretext and that he was not terminated for the legitimate business reasons proffered by Breitling is the fact that for an extended period of time, Plaintiff's supervisors at Breitling, including Mr. Anderson and Mr. Prissert, were giving him explicit and specific feedback (and direct and clear criticism) regarding his job performance (*see* Exhibits M through W), and actually at times were *encouraging him to improve* his performance and to succeed (s*ee* Exhibits N, P, S, T, V, and W). In addition, at Plaintiff's deposition, he admitted that he did not always surpass or achieve his sales goals at Breitling. *See* Def's 56.1 at ¶ 66.  He also admitted that he regularly received feedback and criticism from Mr. Anderson and Mr. Prissert about his schedule and the performance of his sales accounts, and even had received similar criticism about his performance from the prior President of Breitling, Ms. Bodman, who he is not alleging discriminated against him at all.  *See* Def's 56.1 at ¶¶ 67-68; *see also* and Exhibit L.  Plaintiff's mere disagreement with

this extensive performance criticism does not demonstrate pretext. *See Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409, 430 (E.D.N.Y. 2012) ("It is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination."); *Rodriguez v. City of N.Y.*, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) (termination based on faulty investigation does not automatically demonstrate that the employer's proffered reasons are a pretext for termination).

To the extent Plaintiff alleges that his sales goals in 2011 were set "unfairly high," any such assertion would still fail to demonstrate pretext. Plaintiff's sales goals for 2011 were ultimately set by Ms. Bodman, who Plaintiff admitted did not discriminate against him, and not Mr. Prissert. *See* Def's 56.1 at ¶ 97.

With regard to Plaintiff's 2012 sales goals, as part of the process in setting sales representatives' sales goals, each representative would submit their own calculation of what their proposed goals for the upcoming year should be. *See* Def's 56.1 at ¶ 38. On December 20, 2011, Plaintiff himself submitted a proposed sales goal of $16,475,000. *See* Def's 56.1 at ¶ 104 and Exhibit EE. Subsequently, his goal for 2012 was set by Mr. Prissert and Mr. Anderson at $16,500,000, nearly the *exact* amount Plaintiff himself had suggested. *See* Def's 56.1 at ¶ 105. Furthermore, during the middle of the year in July 2012, Mr. Prissert decided to *reduce* Plaintiff's sales goal by 1.1 million dollars, down to $15,400,00, which was even *less* than the original amount Plaintiff himself had suggested his goal be in December 2011. *See* Def's 56.1 at ¶ 107; *see also* Exhibit FF. Such facts completely undercut any claim for pretext or that Plaintiff's 2012 goals were set unfairly high in an effort to have him fail.

Given the evidence in the record, and in viewing the facts in the light most favorable to Plaintiff, it is clear that Plaintiff cannot meet his burden and that no rational trier of fact could find that the legitimate business reasons proffered by Breitling for Plaintiff's termination are pretext for discrimination.  Accordingly, Breitling's motion should be granted and Plaintiff's claims dismissed.

## **CONCLUSION**

Plaintiff cannot demonstrate that Breitling discriminated against him on the basis of his gender, age, or sexual orientation, because his allegations are wholly conclusory and speculative, lacking any specific causal connection between any discriminatory animus and Plaintiff's termination from Breitling in December 2013.  Breitling has proffered legitimate business reasons for Plaintiff's termination, including his poor sales performance and his negative attitude, and Plaintiff cannot show that such reasons are a pretext for discrimination merely by disagreeing with the business decisions of Breitling.  Accordingly, Breitling respectfully requests that the Court issue an order granting defendant Breitling's motion for summary judgment, dismissing Plaintiff's complaint in its entirety, with prejudice, and awarding defendant Breitling such other and further relief as the Court deems just and proper.

Dated: New York, New York
      February 29, 2016             FOX ROTHSCHILD, LLP

                         /s/ *Zev Singer*
                 By:_____
                     Glenn S. Grindlinger
                     Zev Singer
                     100 Park Avenue, Suite 1500
                     New York, New York 10017
                     (212) 878-7900

                     *Attorneys for Defendant Breitling USA, Inc.*

24