UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREDERICK M. CARGIAN,

                Plaintiff,

against

BREITLING, USA, INC.,

                Defendant.

**15 CV 01084 (GBD)(HP)**
**Affirmation of Counsel for Plaintiff**

---

    JANICE GOODMAN, an attorney in good standing in the State of New York, affirms the following under penalty of perjury:

1. I am counsel to plaintiff, Frederick M. Cargian, in the above referenced matter and submit this affirmation in opposition to defendant's motion for summary judgment based on my personal knowledge relating to discovery and to place in the record certain documents and deposition transcripts material to this matter.

2. Plaintiff claims that when Thierry Prissert ("Prissert") became President of Breitling in 2011 he assigned to plaintiff unobtainable sales goals in a not too subtle attempt to set him up for failure. Relying totally on his uncorroborated declaration, Prissert alleges that it was his predecessor, Marie Bodman ("Bodman") who made the "ultimate decision" regarding the 2011 goals. Defendant's Rule 56.1 Statement ¶97, Prissert Decl. ¶ 22. Since the jury is not required to give credence to an uncorroborated statement of an interested party, *Reeves v Sanderson*, 530 U.S. 133, 151 (2000) the court should disregard this purported

evidence. It is particularly not trustworthy in the instant case, since defendant blocked plaintiff's attempt to depose Bodman. Magistrate Pitman ruled in defendant's favor and would not compel production of Bodman, Exh. 1. However, we were all there when he did warn defendant against trying to use Bodman's testimony affirmatively. Moreover, Plaintiff fully contradicts the claim, Exh. Cargian Dep. Tr. 208:7-8; 225:15-236:14; 222:25-223-16. Under the rules of summary judgment all inferences must be for the non- movant.

3. Plaintiff submits further that the data that defendant relies upon to "prove" plaintiff's failure to meet his sales goals is not admissible and highly questionable.

4. I conducted plaintiff's discovery and can attest to the fact that defendant never produced or otherwise identified the underlying data upon which its summary charts regarding goals are based. When asked, the witnesses who claimed to have knowledge either did not know or could not identify the underlying data or the data was no longer retrievable. An example, at the deposition of Charles Anderson, Sales Manager, he claimed that he uses something called "year end reports" to develop his power point presentations, some of which were entered by defendant as Exh. K.  When requested at the deposition, counsel to defendant said that they will not produce the computer printouts. Exh. 13 Anderson Tr. 175:21-177:24. I made a formal letter request post deposition for all year end reports for 2009 through 2013. Defendant raised the usual boiler plate objections, plus a claim that the data no longer exists. Exh.2, ¶ 10 & 11.

5. In terms of goals, none of the sales reps, including plaintiff, had access to the goals of the other reps from 2011 on.  See Cargian Aff. ¶ 8.    In putting forth its evidence on this summary judgment defendant makes no attempt to authenticate the summary charts that it produces as relates to the sales goals.

A. Almost all of the statistical information relating to goals, is based upon statements of Thierry Prissert ("Prissert") or Chuck Anderson ("Anderson") mainly relying upon the power point presentations that Anderson gave at sales meetings. Singer Decl. Exh. K.   See for example: Def. 56, 1 Statement ¶¶ 98-99; 101-103108-109;111-113.

B. Defendant's Exh. K is a much flawed set of documents.  For some reason defendant renumbered the charts introduced in Exh K from those earlier produced which had been introduced at depositions.  Breitling 9044 and 9065 were originally produced as Breitling 631 and 632, both attached herewith as   Exh. 3.  As testified by Amstutz, these were manually produced, not computer generated, as presumably were the other power point presentations. Ex. 26. Amstutz Tr. 37:9-14; 38:2-20; 192:1-19.  The underlying documents used to create these charts were not produced, and to the best one could understand from his testimony, Anderson claimed they could not be reproduced because the information is no longer available. See: Exh 2 ¶ 10.

C. Defendant did everything to obfuscate.  It claims that Cargian's 2011 goals were raised because he had an increase in territory.   Plaintiff requests the number of doors for which each sales rep was responsible.  Defendant objected as irrelevant. Exh. 2. Moreover, , plaintiff attempted to obtain the information regarding doors, through a request for admissions. Defendant denied the numbers proferrred by plaintiff  regarding Cargian and Haley, the two reps who had an increase in territory. Although defendant denies  plaintiff's proffers, it does not clarify as was its obligation under the rules  and as it did regarding other information. Defendant just stonewalled ever producing the numbers. Exh 4   ,para 1 .

D. .Breitling produced yet two different summary documents that purportedly reflect the sales goals and achievements toward those goals for each sales rep from 2010 through 2014. Breitling 635 and Breitling 636 attached as Exh. 5. Anderson did not create these exhibits; and could not attest to their accuracy. Anderson concedes that the data in Breitling 636 could differ from the the data reflected in Breitling 635. Exh. Anderson Tr. 172:7-173:13.

E. Raising even greater credibility questions regarding the documents that purport to compare goals and attainment, Prissert, in answer to interrogatories, swore to the fact that Amstutz created Breitling 635. Not true. At his deposition Amstutz testified that he did not create the document, but that Diane Figueroa, Human Resource Manager, who reported to him, created it and he never checked the accuracy at the time. Exh. 26 , Amstutz Tr. Tr. 55:8-58:3. Amstutz testified that he later learned that there were errors in Breitling 635, but he could not identify them. Amstutz Tr.   Defendant's counsel also conceded that there were errors in the chart, but would never identify the errors.

F. There were clear disparities in some of the number on the various charts. When the witnesses who were identified as persons with knowledge regarding the charts and data were asked about the contradictions in the numbers, they were incapable of doing so.Exh 26. Amstutz Tr: 34:13-21; 75:5-23.


6. Plaintiff submits that based on the lack of substantiation of any of the figures produced by defendant, particularly relating to goals, the only reliable documentation is the Chart with underlying documents produced by plaintiff,

Cargian Aff. Exh. A and Defendant's Responses to Plaintiff's Request for Admission, attached her as **Exh. 4.**

The following Exhibits to be introduced by Plaintiff are affixed to this Affirmation.

6. Ex. 1. Order of Magistrate Judge Pitman
7. Ex. 2. Letter Singer to Goodman responding to discovery requests.
8. Ex. 3 Power Point pages. Breitling 631 & 632
9. Ex. 4. Defendants Responses to Plaintiff's Request for Admissions
10. Ex. 5. Defendants summary charts Breitling 635 & 636.

    Exh. 6. Intentionally omitted

    Ex. 7. Lisa Roman, former Dir. Of Marketing cited excerpts from deposition

    Ex. 8. Monica Vessely, Dir. Of Training, cited excerpts from deposition

    Ex. 9. Frederick Cargian, Plaintiff, cited excerpts from deposition

    Ex. 10. 2012 Power Point Presentation. Breitling 9062 & 9075

    Ex. 11. Intentionally omitted

    Ex. 12. Annie Sommer, Breitling, sales rep, cited excerpts from deposition

    Ex. 13. Charles Anderson, Sales Manager, cited excerpts from deposition

    Ex. 14. Isaac Schafrath, plaintiff's replacement, cited excerpts from deposition

    Ex. 15. Year over year sales comparison 2012/2011 Pl. 0000280

    Ex. 16. Year over year sales comparison 2013/2012 Breitling 633

    Ex. 17. Breitling collateral material—pin-ups used for marketing

    Ex. 18. Drawing in office of President of Breitling SA

    Ex. 19. Sophie Morice, Director of Retail, cited excerpts from deposition

    Ex. 20. Complaint of sex discrimination by sales rep Beth Haddad

    Ex. 21. Warning letter Prissert to Cargian Sept. 18, 2012

Ex. 22. Summary of business related to Bentley 2012/2011  Breitling 9041

Ex. 23. Prissert e-mail to Amstutz re: Reno incident  Breitling 1444-45

Ex. 24   Cargian's unused vacation time,   2012 Pl. 0000180

Exh. 25. Disciplinary material re: Sales Rep. X Breitling 7583-7588; 7591.

Exh. 26.  Sebastian Amstutz, V. P., cited excerpts from deposition.

Exh. 27. Thierry Prissert, President, cited excerpts from the deposition

Exh. 28.  Diane Figueroa, Manager of HR, cited excerpts from  deposition

Exh. 29. Bonus Sheet 2013 for Cargian Breitling 8984

Exh. 30. Order, 2/17/16 denying plaintiff's request for continuation of Amstutz deposition

Exh. 31. Resume of Isaac Schafrath

Exh. 32. Job Description Vault Manager

Exh. 33. Breitling Points of Sale 2012. Breitling 9063

Exh. 34.  E-mails reducing reps goals for 2012 & 2013  Breitling 9087-9098

Exh. 35    Bonus Statements 2012 for all sales reps Breitling 011; 8939-8944

Exh. 36.  Bonus Statements 2013 for all sales reps. Breitling 8984; 8951-57

Exh. 37.    Prissert to Roman re: her complaint 1/20/14

Exh. 38.    Intentionally left blank

Exh. 39. Singer to Goodman 2/3/16 resp. to discovery request

Exh. 40. Memos of criticism of Lambert work

AFFIRMED MARCH 28, 2016

_____
JANICE GOODMAN