UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

FREDERICK M. CARGIAN,

                Plaintiff,        Civil Action No.:
                                                15-CV-01084(GBD)(HBP)

      -against-

BREITLING USA INC.,

                Defendant.

-----------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

                                                          Glenn S. Grindlinger
                                                           Zev Singer
                                                          Fox Rothschild LLP
                                                          100 Park Avenue
                                                          Suite 1500
                                                          New York, New York  10017
                                                          Tel: 212.878.7900
                                                          Fax: 212.692.0940

                                                          *Attorneys for Breitling USA*

39544508

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT....................................................................................................................................2

I.  THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT CAN DEFEAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ............................2

    A.  Plaintiff's 56.1 Response Fails to Comply with the Local Rules ...........................2

    B.  Plaintiff Cannot Controvert Breitling's Evidence Regarding his Low Sales Numbers and Failure to Achieve Sales Goals ........................................................3

II.  PLAINTIFF HAS FAILED TO STATE A PRIMA FACIE OF DISCRIMINATION BASED UPON ANY PROTECTED CHARACTERISTIC .............5

III.  PLAINTIFF CANNOT SHOW THAT BREITLING'S LEGITIMATE BUSINESS REASONS WERE A PRETEXT FOR DISCRIMINATION ...........................................6

    A.  Plaintiff's Sales Goals ...............................................................................................6

    B.  Plaintiff's Sales Performance ...................................................................................7

    C.  The Performance Criticism Plaintiff Received from Breitling................................8

    D.  The Promotion of Isaac Schafrath ...........................................................................9

    E.  Plaintiff's Discipline ................................................................................................9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                       **Page(s)**

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002) ............................................................................................. 8

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004) ............................................................................................. 7

*Baity v. Kralik*,
   51 F.Supp.3d 414, 419 (S.D.N.Y. 2014) .......................................................................... 2

*Danzer v. Norden Systems, Inc.*,
   151 F.3d 50 (2d Cir. 1998) ............................................................................................... 8

*Dawson v. Bumble & Bumble*,
   398 F.3d 211 (2d Cir. 2005) ............................................................................................. 5

*Dejana Industries, Inc. v. Village of Manorhaven*,
   2015 WL 1275474 (E.D.N.Y. 2015) ............................................................................... 4

*Faldetta v. Lockheed Martin Corp.*,
   2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000) ................................................................... 8

*Finn v. N.Y. State Off. of Mental Health - Rockland Psychiatric Ctr.*,
   2011 U.S. Dist. LEXIS 115950 (S.D.N.Y. Oct. 6, 2011) ................................................ 8

*Flaherty v. Filardi*,
   2007 WL 163112 (S.D.N.Y. Jan. 24, 2007) .................................................................... 7

*Garrett v. Garden City Hotel, Inc.*,
   No. 05-cv-0962, 2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. Apr. 19, 2007) ..................... 8

*Getler v. Cornell Weill University Medical College Dept. of Surgery*,
   2007 WL 38276 (S.D.N.Y. 2007) ................................................................................... 7

*Little v. City of New York*,
   487 F.Supp.2d 426 (S.D.N.Y.2007) ................................................................................ 4

*Lizardo v. Denny's, Inc.*,
   270 F.3d 94 (2d Cir. 2001) ............................................................................................. 10

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000) ......................................................................................................... 6

*Shannon v. New York City Transit Authority*,
   189 F.Supp.2d 55 (S.D.N.Y. 2002) ................................................................................. 6

*Wright v. Goldman, Sachs & Co.*,
     387 F.Supp.2d 314 (S.D.N.Y. 2005) ................................................................................................ 2

**Other Authorities**

Local Rule 56.1 ............................................................................................................................. 1, 2, 3, 4

## **PRELIMINARY STATEMENT**

Plaintiff Fred Cargian ("Plaintiff") is a former sales representative of Defendant Breitling USA, Inc. ("Breitling" or "Defendant") whose employment was terminated in December 2013 for legitimate and non-discriminatory reasons; namely, his failure to achieve his sales goals, a decrease in his actual total sales numbers, and his negative attitude towards his job and his boss.

Plaintiffs' Opposition to Defendant's Summary Judgment Motion ("Opposition") does nothing to defeat the arguments set forth in Breitling's moving papers that summary judgment is warranted. Instead, Plaintiff relies on speculation and conjecture in a futile effort to establish that Breitling's business decisions were a pretext for discrimination. In essence, Plaintiff's Opposition asks this Court to act as a "super personnel" department to second guess Breitling's business records, sales data, and years of constructive criticism, all of which establish Breitling's legitimate business decisions. This is not the purview of the judicial system.

Plaintiff fails to raise any genuine issue of material fact, because his Rule 56.1 Response and Counter-Statement ("56.1 Response") violates the requirements of Local Rule 56.1. The 56.1 Response fails to actually contravene Breitling's undisputed facts; instead it interjects argument and commentary to those assertions. As such, nearly all of the material facts set forth in Breitling's Rule 56.1 Statement should be deemed admitted. In addition, Plaintiff's 56.1 Response largely contains unsupported, argumentative characterizations that are not supported by the record. Similarly, Plaintiff submits an inadmissible affirmation from counsel that presents argument, raises improper discovery disputes, and challenges the documents that objectively show Plaintiff's declining sales performance. In contrast, Breitling submitted admissible, uncontroverted documentary evidence regarding Plaintiff's declining sales numbers and his failure to meet sales goals, which Plaintiff cannot legitimately dispute.

1

Finally, Plaintiff fails to explain *how* any of his protected characteristics (gender, sexual orientation, or age) played any role in Breitling's employment decisions. Accordingly, the Court should grant summary judgment to Breitling and dismiss Plaintiff's Complaint.

## ARGUMENT

### I. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT CAN DEFEAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Plaintiff's 56.1 Response Fails to Comply with the Local Rules

Plaintiffs' Rule 56.1 Response violates Local Rule 56.1 and should not be considered. In the section of Plaintiff's 56.1 Response that purports to respond to Defendants 56.1 Statement of Undisputed Material Facts ("Def's 56.1"), Plaintiff fails to contravene Breitling's undisputed facts or to address their actual substance. Instead, he interjects improper qualification, argument, and commentary. *See* Defendant's Reply to Plaintiff's Response to Defendant's Local Rule 56.1 Statement ("Defendant's Reply 56.1 Statement"), at n. 2. Accordingly, virtually all of the undisputed material facts set forth in Def's 56.1 should be deemed admitted.[1] *See Wright v. Goldman, Sachs & Co.*, 387 F.Supp.2d 314 (S.D.N.Y. 2005) (unsupported, conclusory assertions and denials could not refute a movant's Rule 56.1 Statement, and courts in this circuit have not hesitated to deem admitted facts in a Rule 56.1 Statement that have not been controverted by the nonmoving party); *see also Baity v. Kralik*, 51 F.Supp.3d 414, 419 (S.D.N.Y. 2014) (disregarding responses to Rule 56.1 Statement that had conclusory assertions, legal arguments).

---

[1] Furthermore, Plaintiff's Rule 56.1 Counter-Statement (contained within Plaintiff's 56.1 Response) also violates Local Rule 56.1 in that it largely contains argumentative characterizations that are not supported by citations to the record. *See* Defendant's Reply 56.1 Statement, n. 5. As such, nearly all of the material facts identified in Plaintiff Rule 56.1 Response should not be considered by the Court. *See* Defendant's Reply 56.1 Statement, pp. 29-38.

2

## B. Plaintiff Cannot Controvert Breitling's Evidence Regarding his Low Sales Numbers and Failure to Achieve Sales Goals

Just as Plaintiff's Rule 56.1 Response is improper, his Opposition relies on an inappropriate and inadmissible attorney affirmation in an effort to create genuine issues of material fact. Such improper tactics should not be rewarded.

During his last three years at Breitling, Plaintiff's sales numbers were consistently lower than the other sales representatives, and he failed to meet his sales goals during that time:

- 2011: Plaintiff's sales were last out of the seven sales representatives as compared to the sales from the region the prior year. *See* Def's 56.1 at ¶¶ 99-103. He was also last in percentage of his sales goal achieved, having only met 79% of his sales goals. *Id.*

- 2012: Plaintiff's sales were last out of the seven sales representatives as compared to the sales from the region the prior year, and last with regard to percentage of his sales goal achieved (83.76%). *See* Def's 56.1 at ¶¶ 109-113.

- 2013: Plaintiff was tied for second to last out of the seven sales representative with regard to percentage of his sales goal achieved (79%). *See* Def's 56.1 at ¶ 120.

To support these facts, in addition to uncontroverted witness testimony and declarations, Breitling submitted: (i) Plaintiff's sales summaries given to him every year at his review (*see e.g.* Exhibits ("Ex.") "DD" and "HH" attached to the Declaration of Zev Singer dated February 29, 2016 ("Singer Decl.")); (ii) PowerPoint presentations of yearly sales numbers and sales goals, presented publicly to all sales representatives (*see* Singer Decl., Ex. "K"); and (iii) copies of sales summaries that were emailed to sales representatives for review (*see* Singer Decl., Exs. "GG" and "JJ"). Breitling explained how its sales data is calculated, stored, and regularly presented to the sales representatives. *See* Def's 56.1 at ¶¶ 42-50.

Plaintiff disputes these sales numbers and data by submitting an affirmation by his counsel that argues that: (i) Breitling's discovery was deficient, (ii) Plaintiff did not receive the "underlying data" upon which Breitling's sales charts were created, and (iii) Breitling produced

3

inconsistent sales data. *See* generally, Affirmation of Counsel for Plaintiff. However, Plaintiff's counsel's affirmation is improper and inadmissible because "the law is clear that an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment." *Little v. City of New York,* 487 F.Supp.2d 426, 433 n. 2 (S.D.N.Y.2007); *see also Dejana Industries, Inc. v. Village of Manorhaven*, 2015 WL 1275474, at *2 (E.D.N.Y. 2015) (unlike typical attorney affirmation which simply attaches and identifies exhibits, an attorney affirmation consisting entirely of factual assertions and legal arguments renders it improper and inadmissible). Thus, other than the identification of exhibits, counsel's affirmation should be rejected by the Court.

Further, counsel's arguments regarding discovery disputes and the documents and data are unavailing. Plaintiff should have raised any purported discovery disputes during discovery.[2] As for the sales goals documentation that Plaintiff complains he did not receive in discovery, Plaintiff is well aware that each sales representative's sales goal is contained in the yearly employment contracts that Breitling produced in discovery. *See e.g.* Singer Decl., Ex. "I". In addition, the "disparities" in the sales data to which counsel refers appear on one document that counsel is well-aware was created solely for litigation, and is not the underlying business records Breitling relies upon to show Plaintiff's deficient sales numbers. Accordingly, there is no genuine issue of material fact with regard to Plaintiff's sales numbers, as nothing in the record contravenes Breitling's objective data regarding his low sales numbers and failure to achieve sales goals. Counsel's inadmissible affirmation and Plaintiff's improper Rule 56.1 Statement do not change that. Thus, Breitling's motion should be granted.

---

[2] Plaintiff's counsel also asserts that Breitling "blocked" her attempts to depose Marie Bodman, Breitling's former President, who could have testified about who set Plaintiff's 2011 sales goals, and thus an inference should be drawn against Breitling. However, Magistrate Judge Pitman ruled on Plaintiff's request to depose Bodman, finding that Breitling was not compelled to produce her (*see* Docket No. 22). In its Rule 26 disclosures, Breitling provided an address for Bodman and Plaintiff could have deposed Bodman through the Hague Convention, which he did not do. Therefore, such an inference is improper and should be rejected.

## II. PLAINTIFF HAS FAILED TO STATE A PRIMA FACIE OF DISCRIMINATION BASED UPON ANY PROTECTED CHARACTERISTIC

Plaintiff fails to establish a *prima facie* case of discrimination. He has not shown that Breitling took any adverse employment actions against him *because* of his membership in a protected class. With respect to his sexual orientation claim, Plaintiff argues that the law is "rapidly changing" on whether Title VII covers such claims. Yet, the law in this Circuit is clear – Title VII does not cover sexual orientation claims. *See Dawson v. Bumble & Bumble,* 398 F.3d 211, (2d Cir. 2005). Plaintiff utterly conflates his gender and sexual orientations claims using the same "facts" to support both claims. He thus tries to bootstrap his sexual orientation claim into a Title VII gender claim. This is impermissible. *See id.* at 218 ("It is not uncommon for plaintiffs to fall short in their Title VII pursuits because courts find their arguments to be sexual orientation (or other unprotected) allegations masquerading as gender stereotyping claims.") (internal citation omitted). Thus, Plaintiff's gender claim should be dismissed.

As for Plaintiff's sexual orientation discrimination claims under New York State and City law, even in the aggregate, Plaintiff has not shown how any of Breitling's actions were *due to* Plaintiff's sexual orientation. Talking about sports at the office does not constitute sexual orientation discrimination, and because Plaintiff fails to assert any other basis for his sexual orientation claims,[3] they should be dismissed.

---

[3] Plaintiff makes other arguments that he claims prove sexual orientation animus; however, these arguments are illogical and unavailing. For example, Plaintiff claims Breitling's marketing materials somehow support his claims. However, Breitling has used automotive and military symbols (including its "bomb girl" pinup image from World War II) for decades and well before Thierry Prissert, the primary alleged discriminator, joined the company. *See* Prissert Declaration at ¶¶ 62-65. Similarly, Plaintiff has not shown how artwork that hangs in the office of the President of Breitling's parent company had any bearing on the decisions made with respect to Plaintiff's employment. Regarding the trip to Crewe, England, Plaintiff has not proved that all male sales representatives were invited - in fact, Brian Criddle, a heterosexual male sales representative, was not invited to the trip. *See* Prissert Decl. at ¶ 56. Finally, Plaintiff claims he was "forced" to room with Annie Sommer on Breitling trips, but he fails to note the fact that he and Sommer had voluntarily shared rooms multiple times on vacations, and in fact Plaintiff emailed a Breitling employee attesting that he and Sommer had shared rooms for many years before Prissert started with the company. *See* Def's 56.1 at ¶¶ 141-142, 145-146.

5

### III. PLAINTIFF CANNOT SHOW THAT BREITLING'S LEGITIMATE BUSINESS REASONS WERE A PRETEXT FOR DISCRIMINATION

In Opposition, Plaintiff does not dispute that Breitling has articulated legitimate non-discriminatory business reasons for the employment actions it took, but that such business reasons were a pretext for discrimination. However, he relies solely on conjecture and speculation, unsupported by admissible evidence, to challenge Breitling's business decisions. Plaintiff argues that Breitling's business decisions were a pretext for discrimination because: (i) Plaintiff was given "unattainable" sales goals; (ii) the documents supporting Breitling assertion that Plaintiff had poor sales numbers are unreliable and "inadmissible"; (iii) Plaintiff's performance prior to 2011 was allegedly superb and thus the extensive performance criticism that he received must have been done to "paper" his file; (iv) the timing of Isaac Schafrath's promotion; and (v) Breitling unfairly disciplined Plaintiff and did not treat him in the same manner as a similarly-situated employee. These arguments are wholly without merit.

#### A. Plaintiff's Sales Goals

Plaintiff alleges his 2011 sales goals were set by Prissert to be intentionally "unattainable". However, these sales goals were not set by Prissert[4], rather they were set by Bodman, who Plaintiff does not accuse of discrimination. *See* Def's 56.1 at ¶ 97. Plaintiff now claims by affidavit that "it was Prissert who had the ultimate responsibility for setting the unobtainable goals." *See* Plaintiff's Affidavit at ¶ 15. However, Plaintiff has no personal knowledge as to who set his 2011 sales goals; he played no role in the process of setting the

---

[4] Plaintiff cites *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000) for the proposition that uncorroborated testimony of an interested witness is not typically considered on a summary judgment motion. However, *Reeves* actually states that the court should give "credence" to evidence that is not contradicted and from a disinterested witness, and is silent about whether uncorroborated testimony of an interested witness should be considered on a motion for summary judgment. In fact, the Court can certainly accept the facts set forth in Prissert's and Anderson's declarations because all statements made therein are based on their personal knowledge. *See Shannon v. New York City Transit Authority*, 189 F.Supp.2d 55 (S.D.N.Y. 2002) (motion to strike party-employee's affidavit denied, as it was based on personal knowledge).

goals. Thus, his assertion as to who set his 2011 sales goals is pure speculation and should be rejected.[5]  *See Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 131 n. 12 (2d Cir. 2004) (district court free to disregard speculation in affidavits); *Flaherty v. Filardi,* 2007 WL 163112, *4–5 (S.D.N.Y. Jan. 24, 2007) (disregarding inadmissible portions of plaintiff's affidavit in analyzing summary judgment motion).  Logic also dictates that it was Bodman who set Plaintiff's 2011 sales goals, as Prissert had just started at Breitling and Bodman was showing him the process of setting the sales representatives' sales goals.  *See* Def's 56.1 at ¶¶ 16-19. Further undercutting Plaintiff's claim of "unfair" sales goals is that although he claims his 2012 sales goals were also set unfairly high (*see* Plaintiff's Affidavit at ¶ 19), he submitted his *very own* proposed 2012 sales goals to Breitling, which were virtually the same number that was actually set as his 2012 sales goals.  *See* Def's 56.1 at ¶¶ 38, 104-105.

Finally, even if Plaintiff disagrees with *how* his sales goals were set, "the [law] does not prevent an employer from establishing unrealistic job performance standards, if indeed they were, nor does it prevent micro-management."  *Getler v. Cornell Weill University Medical College Dept. of Surgery,* 2007 WL 38276, at * 10 (S.D.N.Y. 2007).  Therefore, Plaintiff's complaints about his sales goals does not establish pretext.

B.      **Plaintiff's Sales Performance**

Breitling's admissible uncontroverted documentation supports its legitimate business reason for Plaintiff's termination - his low sales performance and failure to meet sales goals. In response, Plaintiff submits a speculative, inadmissible attorney affirmation that argues about discovery disputes and asks the Court to second-guess Breitling's sales data.  In short, through the affirmation, he asks the Court to become a "super personnel" department to second guess

---

[5] In fact, Plaintiff testified at deposition that it was his understanding that Prissert, Anderson, *and* Bodman jointly set his sales goals.  *See* Plaintiff's Affidavit at ¶15.  Now he claims, without support, that it was solely Prissert.  At the very least, Plaintiff conceded that Bodman played a role in setting his goals.

7

Breitling performance criteria for its employees. *See Faldetta v. Lockheed Martin Corp.,* 2000 WL 1682759, at *9-10 (S.D.N.Y. Nov. 9, 2000)("Absent evidence of discrimination, it is not the province of the Court to sit as a super-personnel department that reexamines an entity's business decisions."); *see also Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). This is not permitted.

### C. The Performance Criticism Plaintiff Received from Breitling

Plaintiff argues that because his job performance prior to 2011 was allegedly superior, the criticism he received and the declines in his performance under Prissert's supervision must have been pre-textual. Plaintiff is incorrect for at least two reasons.

First, Plaintiff's uncorroborated allegations regarding his performance prior to 2011 are irrelevant because "sudden and unexpected downturns in performance reports cannot, by themselves, provide the basis for a discrimination action." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *Garrett v. Garden City Hotel, Inc.*, No. 05-cv-0962, 2007 U.S. Dist. LEXIS 31106, at *45-46 (E.D.N.Y. Apr. 19, 2007) (plaintiff's receipt of good performance evaluations in the past, standing alone, does not create a genuine factual issue as to whether discrimination was the actual motive behind plaintiff's discharge). Second, Plaintiff's claim that the feedback he received was "papering" his file is utter speculation, belied by the wide scope and extreme specificity of the criticism provided. *See* Def's 56.1 at ¶¶ 74, 76-77, 79-81, 83-84, 87-89. On numerous occasions the criticism of Plaintiff's sales and performance came with encouraging words hoping that he would succeed and meet his goals. *Id*. at ¶¶ 78, 82, 84, 85. The record shows that Plaintiff regularly received specific criticism about his performance, wholly consistent with Breitling's stated legitimate reasons for Plaintiff's ultimate termination. In fact, Plaintiff's prior supervisor, Bodman, criticized Plaintiff in many of the same areas as Prissert and Anderson did. *Id.* at ¶¶ 67-69, 72-73. Thus, Breitling's criticism of Plaintiff's sales and performance is not evidence of pretext. *See Finn v. N.Y. State Off. of Mental Health -*

8

*Rockland Psychiatric Ctr.*, 2011 U.S. Dist. LEXIS 115950, at *38-39 (S.D.N.Y. Oct. 6, 2011) (series of 'serious, independent, documented and therefore good faith complaints' undermines employee's argument that employer's decision to terminate him was pretext for discrimination).

### D.     The Promotion of Isaac Schafrath

Plaintiff's assertion that the timing of Schafrath's promotion evidences pretext has no support.  While Schafrath testified that in Summer 2012 he accompanied Anderson on a sales trip, the fact that Schafrath was independently being considered for a promotion by Breitling does not mean that Plaintiff's territory and salary were reduced *because* Schafrath was being considered for a promotion.  Prissert explained that the reason he decided to promote Schafrath was that Schafrath was performing well in his current job, had expressed a desire to do something else within Breitling, and he knew the brand and product very well.  *See* Def's 56.1 at ¶138.  Plaintiff now seeks to second-guess Prissert's decision to promote Schafrath, alleging that because Schafrath did not have specific sales experience, his promotion *must* have been for discriminatory reasons.  However, Prissert explained that when Plaintiff (and Sommer) had their territories and salary reduced because the territories were not performing well, Prissert decided to give Schafrath a chance as a sales representative[6] as additional territory now had to be covered. *See* Def's 56.1 at ¶¶ 130-136.  Further undercutting Plaintiff's claim that Prissert favored Schafrath is the fact that Prissert *admitted* retrospectively that it had been a mistake to promote Schafrath, and Prissert ultimately demoted Schafrath.  *See* Prissert Decl. at ¶ 41.

### E.     Plaintiff's Discipline

Finally, Plaintiff alleges that he was treated differently than a similarly-situated sales representative with regard to discipline.  Specifically, that he was disciplined more harshly than

---

[6] Nothing in record supports Plaintiff's claim that Prissert had any kind of special "relationship" with Schafrath. Rather, Schafrath testified that he discussed sports on a few occasions with Prissert, but Plaintiff's characterization of Prissert's "relationship" with Schafrath is utter fabrication.

9

heterosexual male sales representative "X". This is utter nonsense. To be "similarly situated," there needs to be a "reasonably close resemblance to facts and circumstances" of a plaintiff's and comparator's cases. *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir. 2001). Here, the facts surrounding Plaintiff's disciplinary write-up for publicly cursing at Prissert are not comparable to sales representative "X"'s misuse of company funds. Primarily, Plaintiff takes issue with the fact that an alleged "full investigation" occurred in reference to "X", while Plaintiff was summarily given a write-up from Prissert. However, in Plaintiff's case, Prissert was physically present for the alleged conduct, so there was no reason for Prissert to conduct an "investigation"- he saw and heard what had transpired. *See* Singer Decl., Ex. "BB". In "X"'s case, Anderson believed he discovered discrepancies with "X"'s expense reports; therefore, Anderson and Breitling management spent time analyzing records to determine whether wrongdoing had in fact occurred. *See* Def's 56.1 at ¶¶ 152-153. Furthermore, "X" also received a stern disciplinary warning (*see* Ex. "25" attached to the Opposition) for his misconduct, and "X" paid back the company funds. *See* Def's 56.1 at ¶¶154-156. Plaintiff has not shown that Breitling treated "X" more favorably, nor are the two incidents comparable to draw any inference about how Breitling treated the two employees.

## CONCLUSION

For the reasons set forth herein and in Breitling's principal brief, the Court should grant summary judgment in favor of Defendant and dismiss Plaintiff's Complaint in its entirety.

Dated: New York, New York
     April 18, 2016                    FOX ROTHSCHILD, LLP
                                         By: /s/ *Zev Singer*
                                              Glenn S. Grindlinger
                                              Zev Singer
                                              100 Park Avenue, Suite 1500
                                              New York, New York 10017
                                              (212) 878-7900
                                         *Attorneys for Defendant Breitling USA, Inc.*