UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

FREDERICK M. CARGIAN,

              Plaintiff,

    -against-

BREITLING USA, INC.,

             Defendant.

------------------------------------------------------------ x

MEMORANDUM DECISION
AND ORDER

15 Civ. 01084 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Frederick M. Cargian filed this action alleging that his former employer, Defendant Breitling USA, Inc. ("Breitling"), discriminated against him on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, (Compl. ¶¶ 44–46), and on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, (Compl. ¶¶ 47–49). Plaintiff also alleges that Breitling discriminated against him on the basis of his age and sexual orientation in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (Compl. ¶¶ 50–55.)

Defendant moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment to dismiss Plaintiff's Complaint in its entirety. Defendant has established that there is no admissible evidence sufficient to allow a trier of fact to find that Defendant discriminated against Plaintiff under Title VII or the ADEA on the basis of gender or age. Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's federal claims. Plaintiff's Title VII and ADEA claims are DISMISSED with prejudice. In light of this Court's dismissal of Plaintiff's federal-law claims and the multiple issues of state law implicated by Plaintiff's remaining claims,

this Court declines to exercise supplemental jurisdiction over Plaintiff's non-federal causes of action.

I.  **BACKGROUND**

Plaintiff is a gay man born on November 23, 1960. (Compl. ¶ 10.) In February 1990, Breitling, a Swiss manufacturer of high-end watches, hired him as a training manager. (*Id.* ¶ 11.) In 1992, Plaintiff was promoted to sales representative and assigned an area from Maine to Richmond, Virginia. (*Id.* ¶ 15.) Each Breitling sales representative was assigned a designated geographic territory; he or she was responsible for sales in that territory. (Def.'s Rule 56.1 Statement ¶ 7, ECF No. 40.) During Plaintiff's last ten years of employment at Breitling, sales representatives' compensation consisted of a base salary and a bonus. (*Id.* ¶ 21.) The bonus was tied to achieving certain specified sales goals as well as qualitative criteria. (*Id.*)

Around September 2010, Breitling hired Thierry Prissert as its new president. (*Id.* ¶ 16.) Plaintiff alleges that Prissert "created a 'boy's club' atmosphere, excluding the 'girls,' a group in which he included Cargian, from his inner circle." (Pl.'s Corrected Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem."), (ECF No. 45), at 1.) For example, Plaintiff alleges that Prissert frequently had conversations about sports at the office with other male sales representatives but excluded Plaintiff; in addition, Plaintiff was not invited to a June 2013 marketing event in England, golf outings with clients, or social events at Prissert's New York apartment, all of which included other male sales representatives. (Compl. ¶¶ 28–29; Pl.'s Rule 56.1 Statement ¶ 179, ECF No. 46.) Plaintiff also claims Prissert called him "darling" on one occasion. (Def.'s Rule 56.1 Statement ¶ 149.) Further, he alleges that on a spring 2011 annual

company trip to Basel, Switzerland, the company assigned him to a shared hotel room with a female sales representative. (Pl.'s Rule 56.1 Statement ¶ 141.)[1]

In 2011, Breitling increased Cargian's sales goal from $13,000,000 to $24,995,000, a 92.2% increase over the prior year. (Def.'s Rule 56.1 Statement ¶ 95; Pl.'s Rule 56.1 Statement ¶ 190.)[2] That year, out of seven sales representatives, Plaintiff achieved the lowest percentage of his or her sales goal. (Def.'s Rule 56.1 Statement ¶¶ 100–101.) In 2012, Breitling initially set Plaintiff's sales goal at $16,500,000, excluding sales to the Tourneau account, which were counted separately. (Id. ¶¶ 40, 105.) In the middle of the year, Prissert reduced Plaintiff's sales goal by $1.1 million to $15,400,000. (Id. ¶ 107.) Plaintiff's 2012 sales were approximately $12,899,581. (Id. ¶ 108.) That year, Plaintiff was again the sales representative who achieved the lowest percentage of his or her sales goal. (Id. ¶ 111.)

Around the end of 2012, Prissert reduced Plaintiff's sales territory and also cut his 2013 base salary from $230,000 to $196,000. (Id. ¶¶ 120, 133–34.) Plaintiff was approximately fifty-two years old at the time. At the same time, Prissert promoted an employee named Isaac Schafrath to sales representative and assigned Schafrath the sales territory that had been removed from Plaintiff and another sales representative. (Id. ¶¶ 136–37.) Schafrath was about thirty-three years old at the time and had no prior sales experience. (Pl.'s Rule 56.1 Statement ¶¶ 205–206; Def.'s Rule 56.1 Statement ¶ 137.)

At the beginning of 2013, Breitling reduced Plaintiff's sales goal to $11,200,000. (Def.'s Rule 56.1 Statement ¶ 114.) In September 2013, Prissert further reduced Plaintiff's 2013 sales

---

[1] Defendant alleges that Plaintiff requested the room for himself and his female colleague. (Def.'s Rule 56.1 Statement ¶ 141.)

[2] Plaintiff alleges Prissert set the goal knowing it was unobtainable, and that Plaintiff had the greatest increase in goals of any rep. (Pl.'s Rule 56.1 Statement ¶ 88.)

-3-

goal to $10,640,000. (*Id.* ¶ 116.) Plaintiff's 2013 sales were approximately $8,452,072. (*Id.* ¶ 117.) Of Breitling's eight sales representatives that year, Plaintiff was tied for achieving the second lowest percentage of his or her sales goal. (*Id.* ¶¶ 119–120.)

Breitling terminated Plaintiff's employment in December 2013. (*Id.* ¶ 157.) Prissert made the decision to terminate Plaintiff. (*Id.* ¶ 158.)

## II.     LEGAL STANDARDS

### A.     Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters., Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the non-moving party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S.

253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### B. *Prima Facie* Case of Discrimination Under Title VII and the ADEA

Plaintiff brings two discrimination claims under federal law: (1) gender discrimination in violation of Title VII, (Compl. ¶¶ 44–46); and (2) age discrimination in violation of the ADEA, (Compl. ¶¶ 47–49).

To state a *prima facie* case of employment discrimination under Title VII and the ADEA, a plaintiff "must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)); *see Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (applying same standard to ADEA suits). If a plaintiff states a *prima facie* case of discrimination, the burden shifts to the defendant to show that any adverse employment action was taken for legitimate, non-discriminatory reasons. *Delaney*, 766 F.3d at 168. "When the employer meets its burden, the

plaintiff can no longer rely on the *prima facie* case, but must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (citations and internal quotation marks omitted). With respect to an ADEA claim, a plaintiff can satisfy this burden only by "presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age was a 'but for' cause of his termination." *Id.* (alterations, citations, and internal quotation marks omitted).

Defendant concedes that Plaintiff belongs to the ADEA's protected class as an individual over forty years of age. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem."), (ECF No. 41), at 5 n.2); *see* 29 U.S.C. § 631(a). Defendant also concedes that Defendant took two adverse employment actions against Plaintiff by (1) reducing Plaintiff's compensation around the end of 2012 when a portion of Plaintiff's sales territory was assigned to Schafrath and (2) terminating Plaintiff's employment in December 2013. (Def's Mem., at 5.)

## III. PLAINTIFF'S TITLE VII CLAIM FOR GENDER DISCRIMINATION FAILS ON THE MERITS UNDER SECOND CIRCUIT LAW

The Second Circuit has held that "Title VII does not proscribe discrimination because of sexual orientation." *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000); *see also Christiansen v. Omnicom Grp., Inc.*, No. 15 Civ. 03440, 2016 WL 951581, at *12–15 (S.D.N.Y. Mar. 9, 2016) (summarizing Second Circuit case law on sexual orientation discrimination under Title VII). Realizing that discrimination based upon sexual orientation is not currently actionable under Title VII, Plaintiff attempts to avail himself of the "the 'gender stereotyping' theory of Title VII liability according to which individuals who fail or refuse to comply with socially accepted gender roles are members of a protected class." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005). Plaintiff's first cause of action therefore claims that Breitling discriminated against him on the basis of his gender in violation of Title VII. (Compl. ¶¶ 44–46.)

Courts in this Circuit must distinguish between claims based on discrimination targeting sexual orientation, which are not cognizable under Title VII, and cognizable claims based on discrimination targeting nonconformity with gender stereotypes. *See Christiansen*, 2016 WL 951581, at *12. The Circuit has warned that "a gender stereotyping claim should not be used to 'bootstrap protection for sexual orientation into Title VII.'" *Dawson*, 398 F.3d at 218 (quoting *Simonton*, 232 F.3d at 38). "[D]istrict courts in this Circuit have repeatedly rejected attempts by homosexual plaintiffs to assert employment discrimination claims based upon allegations involving sexual orientation by crafting the claim as arising from discrimination based upon gender stereotypes." *Dawson*, 398 F.3d at 219 (summarizing cases). Despite significant changes in the broader legal landscape since the Second Circuit's decision in *Simonton*, the prevailing law in this and every other Circuit to consider the question is that, in the Title VII context, courts must distinguish between actionable gender-stereotyping claims and non-actionable sexual orientation claims. *See Christiansen*, 2016 WL 951581, at *13–14. Courts have found actionable Title VII claims in cases where plaintiff suffered adverse employment action for failing to conform to stereotypical gender norms through behavior or appearance. *See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (holding that stereotypical remarks about the incompatibility of motherhood and employment can be evidence that gender played a part in adverse employment decision); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251–52 (1989) (finding sufficient evidence of sexual stereotyping where an employer's performance evaluations criticized female plaintiff's tendency to act in what was seen as a masculine manner).

In his opposition brief, Plaintiff argues that he "as a gay man was treated less well than straight men because, based on the fact that [sic] as a gay man he was stereotypically viewed as one of the 'girls' by Prissert; and the workplace was permeated with a macho atmosphere that

excluded 'the girls' from the president's inner circle." (Pl.'s Mem., at 21.) Plaintiff's argument conflates a sexual orientation discrimination claim with a gender-stereotyping claim. Such claims are not actionable under current Second Circuit law. *See, e.g., Christiansen*, 2016 WL 951581, at *15 (finding no basis to infer that male plaintiff behaved in a stereotypically feminine manner or that employer's behavior arose from a perception of plaintiff as insufficiently masculine) (citing *Simonton*, 232 F.3d at 38); *Dawson*, 398 F.3d at 222–23 (finding no substantial evidence that plaintiff's alleged failure to conform her appearance to feminine stereotypes resulted in her suffering any adverse employment action).

Moreover, Plaintiff has failed to show that he suffered an adverse employment action under circumstances giving rise to an inference of intentional discrimination based upon Plaintiff's membership in a protected class. In support of his argument that he was treated as one of "the girls," Plaintiff alleges (1) frequent conversations about sports at the office from which he was excluded, (2) a business trip when he was assigned to share a hotel room with a female colleague, and (3) Breitling's use of images in its marketing campaigns that Plaintiff alleges are degrading to women and are "surely not pin ups that would entice gay men." (*See* Pl.'s Mem., at 21–23.)

Frequent conversations about sports at an office do not constitute discrimination based upon gender stereotypes. Moreover, Plaintiff had voluntarily shared a hotel room with that same female colleague on multiple occasions on vacation, and Plaintiff had emailed a Breitling employee saying that he and the female colleague had shared rooms multiple times before Prissert started at Breitling. (*See* Def.'s Rule 56.1 Statement ¶¶ 141–42, 145–46.) Finally, Plaintiff has failed to show how Breitling's marketing materials are in any way relevant to the employment actions taken against him.

There is no record evidence on which a rational finder of fact could conclude that Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on the basis of Plaintiff's gender. Plaintiff's first cause of action for gender discrimination in violation of Title VII is therefore DISMISSED.

## IV. PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF AGE DISCRIMINATION

Plaintiff has failed to show that age discrimination played any role in Breitling's adverse employment actions against him. The sole allegation related to age discrimination in the Complaint is that Schafrath "was about 33 years old" in January 2013, when he was promoted to sales representative and assigned part of Plaintiff's sales territory by Prissert. (Compl. ¶ 30.) Plaintiff also testified that on one occasion, his immediate supervisor said to him, "you're so old, you wouldn't remember that – you probably didn't remember that." (Def.'s Rule 56.1 Statement ¶ 150.)

On the other hand, Plaintiff testified that Prissert never made any comments about Plaintiff's age. (Def.'s Rule 56.1 Statement ¶ 147.) Moreover, the fact that six out of the seven other sales representatives who shared Plaintiff's title and position were over forty years old and were therefore in the ADEA's protected class at the time that Plaintiff was terminated by Breitling in December 2013 belies Plaintiff's age discrimination claim. (Def.'s Rule 56.1 Statement ¶ 160.) *See, e.g., Holowecki v. Fed. Express Corp.*, 644 F. Supp. 2d 338, 357 (S.D.N.Y. 2009) (finding no evidence of age discrimination where other employees of a similar age did not experience the same adverse employment action as plaintiff).

Plaintiff has failed to demonstrate any causal relationship between his age and the adverse employment actions taken against him. Plaintiff has therefore failed to establish a *prima facie* age

discrimination claim under the ADEA. Plaintiff's second cause of action for age discrimination in violation of the ADEA is DISMISSED.

### C. Plaintiff's State and City Claims Are Dismissed Without Prejudice

In addition to his claims under Title VII and the ADEA, Plaintiff claims that Breitling discriminated against him on the basis of his sexual orientation and age in violation of the NYSHRL and the NYCHRL. (Compl. ¶¶ 50–55.) In light of this Court's dismissal of Plaintiff's federal-law claims and the multiple issues of state law implicated by Plaintiff's remaining claims, this Court declines to exercise supplemental jurisdiction over Plaintiff's non-federal causes of action. Plaintiff's third and fourth state and city law causes of action for discrimination in violation of the NYSHRL and NYCHRL are therefore DISMISSED without prejudice.

### IV. CONCLUSION

Defendant's motion for summary judgment is GRANTED. Plaintiff's first cause of action for violation of Title VII and second cause of action for violation of the ADEA are DISMISSED with prejudice. Plaintiff's third cause of action for violation of the NYSHRL and fourth cause of action for violation of the NYCHRL are DISMISSED without prejudice.

The Clerk of Court is directed to close the above-captioned action.

Dated: September 29, 2016
New York, New York

SO ORDERED.

*George B. Daniel*

GEORGE B. DANIELS
United States District Judge