


101 Park Avenue, Suite 1700
New York, NY 10178
Tel 212.878.7927 Fax 212.692.0940
www.foxrothschild.com

GLENN S. GRINDLINGER
Direct No: 212.905.2305
Email: GGrindlinger@FoxRothschild.com

November 9, 2020

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
for Southern District of New York
500 Pearl St.
New York, NY 10007

**Re: Cargian v. Breitling USA, Inc.**
**Civil Action No.: 15-cv-01084**

Your Honor:

Pursuant to the Court's October 8, 2020 Order and Rule 56 of the Federal Rules of Civil Procedure, Defendant Breitling USA, Inc. ("Breitling") renews its Motion for Summary Judgment to dismiss all of Plaintiff Frederick Cargian's ("Plaintiff") remaining claims. For purposes of this renewed Motion, we assume the Court's familiarity with the facts and refer to Breitling's Local Rule 56.1 Statement ("Def's 56.1") and the Declaration of Zev Signer (and the exhibits attached thereto), previously filed with the Court at Docket Nos. 44 and 39 respectively.

Breitling employed Plaintiff as a sales representative until it terminated his employment effective December 31, 2013. Plaintiff, who identifies as a gay man, alleges that he was treated less favorably because of his sexual orientation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL"). Plaintiff alleges that because of his sexual orientation, Breitling reassigned some of his sales territory during Plaintiff's last year of employment with Breitling, reduced his salary, and ultimately terminated his employment.

Plaintiff's claims are meritless. He cannot demonstrate a *prima facie* case of discrimination, much less demonstrate that Breitling's legitimate business reasons for its actions are pretext for discrimination. Indeed, there is simply no evidence that Breitling treated Plaintiff differently or adversely because of his sexual orientation. Accordingly, the Court should grant summary judgment to Breitling on all of Plaintiff's claims and dismiss Plaintiff's Complaint.

**Procedural History**

Originally, Plaintiff alleged that Breitling discriminated against him on the basis of sex, sexual orientation, and age in violation of Title VII, the Age Discrimination in Employment Act, the SHRL, and the CHRL. In 2016, Breitling moved for summary judgement on all claims, which Plaintiff opposed. On September 29, 2016, this Court granted Breitling's motion with respect to Plaintiff's federal claims and declined to exercise supplemental jurisdiction over Plaintiff's State and City claims. Plaintiff appealed that decision with respect to his sex and sexual orientation discrimination claims, but not with respect to his age discrimination claim. *See Cargian v. Breitling USA, Inc.*, Case No. 16-3592, Docket No. 37, *Plaintiff's Appellate Brief* at 4 fn. 1 (2d Cir. Jan. 26, 2017)("Plaintiff is not appealing dismissal of his ADEA claim."). As such, Plaintiff's age discrimination claim has been adjudicated in Breitling's favor. *See United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) ("'[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone,' it is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues[.]") (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)).

This Court previously held that Plaintiff's sex discrimination claim under Title VII failed for two reasons. *See generally*, Docket No. 63. First, at the time, Your Honor held that Title VII did not recognize sexual orientation discrimination as a viable claim. *See id*. at 6. Second, Your Honor held that "Defendant has established that there is no admissible evidence sufficient to allow a trier of fact to find that Defendant discriminated against Plaintiff." *Id*. at 1. Following its decision in *Zarda v. Altitude Express,* 883 F.3d 100 (2d Cir. 2018), the Second Circuit reversed this Court's decision that Title VII did not recognize a claim for sexual orientation discrimination. *See Cargian v. Breitling USA, Inc.*, 737 Fed.Appx. 41, 42 (2d Cir. 2018)(Summary Order). However, the Second Circuit did not reverse Your Honor's decision that Plaintiff failed to establish that he was discriminated against by Defendant on the basis of his sex. Instead, the Second Circuit merely remanded the case back to Your Honor.

**The Bostock Decision**

On June 15, 2020, the Supreme Court, in *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731 (2020), held that sexual orientation discrimination is a form of sex discrimination and thus is prohibited by Title VII. However, *Bostock* does not significantly alter the analysis set forth in Breitling's initial Motion for Summary Judgment nor in the prior decision that Your Honor issued in granting said Motion. Indeed, *Bostock* only held that sexual orientation was a form of sex discrimination protected by Title VII. *Id*. at 1737. It did not change the manner in which courts are to analyze Title VII claims, nor did it alter the burdens necessary for a party to prevail on summary judgment. In essence, it only added "sexual orientation" to the characteristics protected by Title VII. *Id*. at 1754.

In its initial Motion for Summary Judgment, Breitling thoroughly explained why Plaintiff's claim for sexual orientation discrimination was conclusory speculation. In fact, this Court already held that "Plaintiff has failed to show that he suffered an adverse employment action under circumstances giving rise to an inference of intentional discrimination based upon Plaintiff's membership in a protected class." Docket No. 63 at 8.[1] Nothing in *Bostock* alters this conclusion. Accordingly, Breitling's renewed Motion for Summary Judgment should be granted.

**Plaintiff's Sexual Orientation Claim Is Without Merit**

To state a *prima facie* case of discrimination under Title VII, the SHRL, and the CHRL, a plaintiff must allege that he suffered an adverse employment action under circumstances giving rise to an inference of intentional discrimination based upon plaintiff's membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 311-12 (2d Cir. 1997); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004) (noting that courts should use the *McDonnell Douglas* framework for analyzing claims under the SHLR); *Bennett v Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 45 (1st Dep't 2011) (noting that courts should use the *McDonnell Douglas* framework for analyzing claims under the CHRL[2]). If a plaintiff meets this burden, then the burden shifts to the defendant to show that any adverse employment action was taken for legitimate, non-discriminatory reasons. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Once the defendant produces such evidence, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." *Id.* at 511. At that point, "the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).

Here, Plaintiff fails to state a *prima facie* case of sexual orientation discrimination because he cannot demonstrate that any actions taken with regard to his employment were based upon his sexual orientation. Furthermore, Plaintiff is unable to demonstrate that Breitling's legitimate business reasons are mere pretext for discrimination. Accordingly, Plaintiffs sexual orientation discrimination claims should be dismissed.

---

[1] In its remand Order, the Second Circuit did not alter this conclusion. Rather, the Second Circuit merely stated that "the district court should have an opportunity to consider in the first instance whether Cargian's claims can survive a motion for summary judgement after *Zarda* altered th[e] legal landscape. . . . [W]e express no opinion as to the proper resolution of Cargian's Title VII and state law claims[.]" *Cargian*, 737 Fed.Appx. at 42.

[2] While claims under the CHRL follow the burden-shifting *McDonnel Douglas* framework, the CHLR "mandates that courts be sensitive to the distinctive language, purposes, and method of analysis required by the [CHRL] requiring an analysis more stringent than that called for under with Title VII or the [SHRL]," *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 65-66 (1st Dep't 2009); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (directing Courts to undertake a separate and independent analysis of CHRL claims).

**A. Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination**

An adverse employment action is a "materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities" such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "[A] plaintiff's subjective feelings cannot be used to determine whether an employment action is 'adverse'." *See Islamic Soc'y of Fire Dep't Pers. v. City of New York*, 205 F. Supp. 2d 75, 84 (E.D.N.Y. 2002). Therefore, here, the only conceivable adverse employment actions taken by Breitling against Plaintiff are: (1) Breitling's reduction of Plaintiff's salary at the end of 2012/beginning of 2013 after a portion of Plaintiff's sales territory was reassigned to Isaac Schafrath, the newly promoted sales representative; and (2) Breitling's termination of Plaintiff's employment in December 2013.

Notwithstanding the fact that Plaintiff is a member of protected classes and that Breitling took these two adverse employment actions against him, Plaintiff cannot demonstrate a causal connection between his sexual orientation, and the adverse employment actions he suffered. Indeed, Plaintiff offers nothing but conclusory and speculative assertions that his salary reduction and ultimate termination must have been based upon discriminatory reasons, which is insufficient to defeat summary judgment. As such, Plaintiffs claims should be dismissed and the renewed motion granted. *See Ochei v. All Care / Onward Healthcare*, No. 07 Civ. 0968, 2009 U.S. Dist. LEXIS 28993 at *29 (S.D.N.Y. 2009) (Plaintiff's "unsupported speculation" that he suffered sexual orientation discrimination is wholly insufficient to meet his *prima facie* burden.).

Plaintiff alleges no direct evidence of discrimination, nor is there any evidence in the form of remarks or actions showing animosity towards Plaintiff's sexual orientation. Plaintiff himself admits that the decision maker with regard to his termination, Thierry Prissert, made absolutely no comments regarding his sexual orientation. *See* Def's 56.1 at ¶ 148.[3] In the absence of any such evidence (or anything else), Plaintiff cannot establish that Breitling's actions were motivated by discrimination. *See Paulose v. New York City Department of Education,* No. 05-9353, 2007 U.S. Dist. LEXIS 34146, at *29-30 (S.D.N.Y. 2007).

Instead, Plaintiff relies essentially on conclusory allegations that he was treated differently based upon the fact that he is gay. *See, e.g.*, Exhibit A, at ¶ 29[4]. When asked at his deposition how he was discriminated against on the basis of his sexual orientation, Plaintiff testified that he was not invited to all events and trips that others were, had unattainable sales goals set, was excluded from

---

[3] See Docket No. 44.

[4] All "Exhibits" refer to the Exhibits to the Declaration of Zev Signer, Docket No. 39.

sports conversations, was not invited to Mr. Prissert's apartment, and was ultimately terminated.[5] *See* Plaintiff's Dep., Exhibit D, at 270:19-271:4, 274:13-277:12. Such allegations are wholly conclusory in nature, Plaintiff cites no specific or direct evidence that these actions had anything to do with his sexual orientation. *See Moccio v. Cornell University*, 889 F. Supp. 2d 539, 528 (S.D.N.Y. 2012) (observing that conclusory allegations are not enough to support an inference of discrimination).[6]

Plaintiff asserts that as evidence of discriminatory animus toward him on the basis of his sexual orientation, Mr. Prissert assigned him to share a room with Annie Sommer, a female sales representative, at an annual Breitling sales trip to Basel, Switzerland. *See* Exhibit A, at ¶ 29(d). However, this allegation is not evidence of any discrimination against Plaintiff because *all* of the sales representatives needed to share rooms on the Switzerland trips. *See* Anderson Decl. at ¶ 39.[7] Furthermore, Plaintiff and Mr. Sommer had voluntarily chosen to share rooms on some occasions, and Plaintiff stated in an email that he and Ms. Sommer had been sharing rooms for years. *See* Def's 56.1 at ¶¶ 141, 146. Therefore, even if Plaintiff and Ms. Sommer were assigned to share rooms on the Switzerland trip, this is not evidence of sexual orientation discrimination. *See* Docket No. 63 at 8.

Simply put, Plaintiff has not presented evidence to show that any of the alleged actions taken by Breitling were motivated by discriminatory animus. *See Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful") (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). Accordingly, Plaintiff's claims of sexual orientation discrimination must fail as a matter of law[8].

### B. Breitling Articulated Legitimate, Non-Discriminatory Reasons For Its Actions

In addition, Plaintiff's sexual orientation discrimination claims fail because Breitling has articulated legitimate, non-discriminatory reasons for the adverse actions taken with regard to

---

[5] Although not stated at his deposition, Plaintiff now claims that Breitling's marketing materials evidence sexual orientation discrimination. *See* Docket No. 44 at 21-23. However, this Court has already held that "Plaintiff has failed to show how Breitling's marketing materials are in any way relevant to the employment actions taken against him." Docket No. 63 at 8.

[6] This Court has already held that frequent conversations about sports, sharing a room with Ms. Sommer, and not attending events do not give rise to an inference of discrimination. *See* Docket No. 63 at 8-9.

[7] The Declaration of Charles Anderson is attached to the Declaration of Zev Signer as Exhibit "C". *See* Docket No. 39.

[8] Again, even under the higher CHRL standard, Plaintiff's allegations of sexual orientation are all conclusory and he cannot establish that sexual orientation discrimination played any role at all in Breitling's decision to terminate him or reduce his salary.

Plaintiff. Breitling's burden in this regard is minimal. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999).

Breitling articulated its legitimate and non-discriminatory reasons for Plaintiff's termination in December 2013. First, Mr. Prissert made the decision to terminate Plaintiff's employment because Plaintiff's sales results in his region were poor and had been below expectations for 3 straight years. *See* Prissert Decl. at ¶ 49.[9] In 2011, Mr. Prissert's first full year working as President of Breitling, Plaintiff was last out of the seven sales representatives with regard to his sales. *See* Def's 56.1 at ¶¶ 99-103. In 2012, Plaintiff was again last out of the seven sales representatives with regard to his sales. *See* Def's 56.1 at ¶¶ 109-113. In 2013, Plaintiff's last year with Breitling, he was tied for second to last out of the seven sales representative with regard sales goals. *See* Def's 56.1 at ¶ 120.

Second, Mr. Prissert decided to terminate Plaintiff's employment because he consistently exhibited negative attitude toward management and his work. Examples of this negative attitude include: (i) some of his sales accounts/customers having expressed to Breitling management that Plaintiff was bitter and unhappy with Breitling; (ii) Plaintiff publicly exclaimed in front of the other sales representatives that he would only work "9 to 5"; (iii) Plaintiff regularly resisted any kind of constructive criticism and expressed that he knew how to do his job and needed no guidance (despite declining sales numbers); (iv) Plaintiff failed to consistently visit all of his accounts; (v) Plaintiff wrote in a self-evaluation that he would better be suited as President of the Company; and (vi) Plaintiff resisted using new tools and methodology Breitling required him to use. *See* Prissert Decl. at ¶49 and Anderson Decl. at ¶ 41.

Breitling has also articulated its legitimate business reasons for having reduced Plaintiff's territory (and consequently his base salary) at the end of 2012/beginning of 2013, and having promoted Mr. Schafrath to sales representative. Mr. Prissert decided to split and reduce Plaintiff's and Ms. Sommer's territory respectively because neither sales representative had performed well in 2012, and Mr. Prissert determined that reducing their territory for 2013 would give them a chance to succeed on a smaller territory. *See* Prissert Decl. at ¶ 35. Since he reduced their territory, Mr. Prissert determined that Breitling needed to add an additional sales representative to cover the accounts that he was removing from Plaintiff's and Ms. Sommer's territory. *See* Prissert Decl. at ¶ 38. Therefore, Mr. Prissert made the decision to promote Mr. Schafrath to sales representative to cover the territories that had previously been serviced by Ms. Sommer and Plaintiff. *See* Prissert Decl. at ¶ 40. Along with the reduction of territory and responsibility, Breitling determined that Plaintiff's and Ms. Sommer's salaries should be reduced because they would be covering significantly less territory than they had the year before. *See* Prissert Decl. at ¶ 36. There is no

---

[9] The Declaration of Theirry Prissert is attached to the Declaration of Zev Singer as Exhibit "B". *See* Docket No. 39.

evidence whatsoever that these decisions had anything to do with Plaintiff's sexual orientation and Plaintiff cannot point to any evidence to the contrary.

Accordingly, all decisions regarding Plaintiff were taken for legitimate business reasons and therefore summary judgment should be granted to Breitling.

**C. Plaintiff Cannot Establish Pretext**

After articulating their legitimate non-discriminatory reasons, a defendant will be entitled to summary judgment unless the plaintiff can point to evidence supporting a finding of discrimination. *See James*, 233 F.3d at 154. For a plaintiff to show that a defendant's non-discriminatory reasons are pretextual, he must show "'both that the reason was false, and that discrimination was the real reason.'" *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1225 (2d Cir. 1994) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).

Plaintiff's subjective disagreement with the decision to terminate him and the basis upon which that decision was made is insufficient to support a claim of discrimination or to sustain his burden to show pretext. Indeed, a plaintiff is required to prove discrimination, not to simply provide a difference of opinion. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). "Where an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though **partially subjective** evaluation of. . .qualifications, no inference of discrimination can be drawn.'" *Id.* at 105 (quoting *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980)) (emphasis added).

Any claim Plaintiff may make that his sales performance and attitude were in fact up to par are the epitome of his own subjective disagreement with Breitling's business decisions. Wholly undermining Plaintiff's claim of pretext and that he was not terminated for the legitimate business reasons proffered by Breitling is the fact that for an extended period of time, Plaintiff's supervisors at Breitling, including Mr. Anderson and Mr. Prissert, were giving him explicit and specific feedback (and direct and clear criticism) regarding his job performance (*see* Exhibits M through W), and actually were *encouraging him to improve* his performance and to succeed (s*ee* Exhibits N, P, S, T, V, and W). In addition, Plaintiff admitted that he did not always surpass or achieve his sales goals at Breitling. *See* Def's 56.1 at ¶ 66. He also admitted that he regularly received feedback and criticism from Mr. Anderson and Mr. Prissert about his schedule and performance, and even had received similar criticism from the prior President of Breitling, Ms. Bodman, who he is not alleging discriminated against him. *See* Def's 56.1 at ¶¶ 67-68; *see also* and Exhibit L.

To the extent Plaintiff alleges that his sales goals in 2011 were set "unfairly high," any such assertion would still fail to demonstrate pretext. Plaintiff's sales goals for 2011 were ultimately set by Ms. Bodman, who Plaintiff admitted did not discriminate against him, and not Mr. Prissert. *See* Def's 56.1 at ¶ 97.

With regard to Plaintiff's 2012 sales goals, as part of the process in setting sales representatives' sales goals, each representative would submit their own calculation of what their proposed goals for the upcoming year should be. *See* Def's 56.1 at ¶ 38. On December 20, 2011, Plaintiff himself submitted a proposed sales goal of $16,475,000. *See* Def's 56.1 at ¶ 104 and Exhibit EE. Subsequently, his goal for 2012 was set by Mr. Prissert and Mr. Anderson at $16,500,000, nearly the *exact* amount Plaintiff had suggested. *See* Def's 56.1 at ¶ 105. Furthermore, in July 2012, Mr. Prissert decided to *reduce* Plaintiff's sales goal by $1.1 million, down to $15,400,00, which was *less* than the amount Plaintiff had originally suggested. *See* Def's 56.1 at ¶ 107; *see also* Exhibit FF. Such facts completely undercut any claim for pretext or that Plaintiff's 2012 goals were set unfairly high in an effort to have him fail.

Given the evidence in the record, and in viewing the facts in the light most favorable to Plaintiff, it is clear that Plaintiff cannot meet his burden and that no rational trier of fact could find that the legitimate business reasons proffered by Breitling for Plaintiff's termination are pretext for discrimination. Accordingly, Breitling's renewed motion should be granted and Plaintiff's sexual orientation discrimination claim dismissed.

* * *

Plaintiff cannot demonstrate that Breitling discriminated against him on the basis of his sexual orientation because his allegations are wholly conclusory and speculative, lacking any specific causal connection between any discriminatory animus and any adverse action. Breitling has proffered legitimate business reasons for Plaintiff's termination, including his poor sales performance and negative attitude, and Plaintiff cannot show that such reasons are a pretext for discrimination. Accordingly, Breitling respectfully requests that the Court grant Breitling's renewed motion for summary judgment, dismissing Plaintiff's complaint in its entirety, with prejudice, and awarding Breitling such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Glenn S. Grindlinger*

James Lemonedes
Glenn S. Grindlinger

cc: All counsel of record via ECF