<u>Table of Contents</u>

Procedural History..................................................................................................1

Factual Background.................................................................................................3

Summary Judgment Standards.................................................................................5

Bostock...................................................................................................................7

The Contested Evidence Compels Dismissal of Defendant's Motion..........................8

    A.  Prima Facie Case......................................................................................8

    B.  Defendant's Alleged Defenses..................................................................10

    C.  Plaintiff Has Produced Evidence That Defendant's
       Rationales are Pretextual.........................................................................11

          1.   Failure to Meet Goals.....................................................................11

          2.   Demotion and Salary Reduction......................................................13

          3.   Replacement by an Unqualified Heterosexual Man............................14

          4.   Cargian was Terminated Because of Failing Sales..............................15

          5.   Cargian was Terminated Because He Was the
              Least Productive Sales Representative in 2013....................................17

          6.   Cargian Had a Bad Attitude.............................................................18

          7.   Cargian Failed to Consistently Visit Accounts...................................19

          8.   Cargian Violated Company Policies...................................................19

          9.   Cargian Was Allegedly Disrespectful in 2012....................................19

    D.  Evidence of Sex-Based Animus.................................................................21

    E.  Conclusion...............................................................................................24

*JANICE GOODMAN*
**Attorney at Law**

*61 Jane Street*                                              *Tel. 212-869-1940*
*New York, N.Y. 10014*                          *jg@janicegoodmanlaw.com*

December 9, 2020

**VIA ECF**

Hon. George B. Daniels
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

      **Re:** *Cargian v. Breitling USA, Inc.*, 15-cv-01084 (GBD)

Your Honor:

      Plaintiff, Frederick M. Cargian ("Cargian" or "Plaintiff"), he/him/his pronouns, submits this letter Memorandum of Law in opposition to Breitling USA's ("Breitling" or "Defendant") renewed motion for summary judgment and to request that the court reinstate his pendant state and city human rights claims.

## PROCEDURAL HISTORY

      On February 17, 2015, Cargian filed this action alleging discrimination on the basis of sexual orientation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City and New York State human rights laws[1] alleging unlawful employment

---

[1] 42 U.S.C.§§ 2000e et seq.; New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); and the Administrative Code of the City of New York § 8-107 et seq. The federal and state statutes are analyzed under the same summary judgment standards. *Brennan v. Metro. Opera Ass'n Inc.*, 192 F.3d 310, 316 (2d Cir. 1999).  However, the NYC law has been held to be much more

1

discrimination on the basis of his sexual orientation. By Order dated September 22, 2015, this court granted summary judgment to Defendant, dismissing Plaintiff's Title VII claim, holding that Plaintiff did not establish a *prima facie* case of gender stereotyping under then-established law of The United States Court of Appeals for the Second Circuit ("Second Circuit") in *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) and *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005). This court also dismissed Plaintiff's pendant claims without prejudice, since those laws specifically prohibit discrimination on the basis of sexual orientation.

On September 10, 2018, the Second Circuit reversed the grant of summary judgment based on its decision in *Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018). *Zarda* held that "sexual orientation discrimination is motivated, at least in part, by sex and is thus a subset of sex discrimination" prohibited by Title VII. *Id.* at 112. Cargian's case was remanded to this court for further proceedings consistent with that ruling. The Second Circuit specifically stated, "we express no opinion as to the proper resolution of Cargian's Title VII and state law claims on remand." ECF No. 71. Subsequently, the Supreme Court affirmed the Second Circuit's conclusion in *Zarda*, holding, "an employer violates Titles VII, which makes it unlawful to discriminate against an individual 'because of' the individual's sex, by firing an individual for being homosexual or being a transgender person." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1731 (2020).

---

protective of victims of discrimination and is to be analyzed separately. *Mihalik v. Credit Agricole Cheuvreux No. Am.*, 715 F.3d 102 (2d Cir. 2013). The New York City Human Rights Law ("NYCHRL") does not "require 'a connection between the discriminatory conduct and a materially adverse employment action.'" *Richards v. N.Y.C. Dep't of Educ.*, 2015 WL 4164746, at * 10 (S.D.N.Y. July 10, 2015).

## FACTUAL BACKGROUND

Cargian, an openly gay man with 23 years of successful employment as a sales representative with Breitling, claims that he was subjected to disparate treatment in the terms and conditions of his employment because of his sexual orientation. Cargian was demoted in status and compensation in 2012 and ultimately fired under pretext on December 31, 2012. Cargian was replaced by Isaac Schafrath ("Schafrath"), a younger, vastly inexperienced and unqualified heterosexual man. ECF No. 46, Pl. Rule 56.1 Statement, ¶¶ 205-296.

Cargian was originally hired by Marie Bodman ("Bodman"), former President of Breitling, in February 1990, as Breitling's National Training Manager and in 1992 he was promoted to Regional Sales Representative. ECF No. 48, Cargian Aff., ¶¶ 3-13, Exh. A. From the late 1990s to 2010, Cargian was Breitling's top sales representative, increasing sales over the prior year from between 15% to 46%. Some years, Cargian surpassed sales goals by 118% to 130%. In 2010, Plaintiff was the highest producing sales representative, increasing his sales by 40% over the prior year. Bodman rewarded Cargian's outstanding performance with significant compensation increases, ultimately raising his base salary from $35,000.00 to $230,000.00 by 2008. *Id.*

In late 2010, Bodman left Breitling, USA and Thierry Prissert ("Prissert") was hired as Breitling's new President. Within one year under Prissert's supervision, Cargian went from being one of the best performers to being considered one of the worst performers by the new management. Prissert established a "boys club." This boys club created an atmosphere of toxic masculinity, heteronormative values, and hypermasculinity. This new inner circle was solely comprised of the four heterosexual male sales representatives and Chuck Anderson

3

("Anderson"), another heterosexual male.[2] Cargian, as a gay man, along with the two female sales representatives, were excluded from Prissert's "boys club." The evidence demonstrates that Prissert erected barrier after barrier to assure Plaintiff's failure and give Prissert pretext to fire Plaintiff. Prissert imposed unattainable sales goals increases for Cargian, more than for any other male sales representatives, ECF No. 47,[3] Goodman Affirmation, Exh. 4, Def. Resp. Admissions, ¶¶ 33-54;[4] reprimanded Cargian for violating an alleged company policy even when no such

---

[2] At the time there were seven sales representatives: Cargian, Brian Criddle ("Criddle"), Patrick Cawthorne ("Cawthorne"), Beth Haddad ("Haddad"), Josh Haley ("Haley"), Rick Lambert ("Lambert") and Annie Sommer ("Sommer"). Chuck Anderson ("Anderson") who had been acting as the Sales Manager as well as covering a sales region, was relieved of his sales duties and became a full-time manager under Prissert.

[3] Unless otherwise indicated, all exhibits are attached to ECF No. 47, Goodman Affirmation in Opposition to Summary Judgment.

[4] The Goodman Affirmation has 37 separate exhibits. The Clerk's Office consolidated those 37 exhibits into 14 exhibits when it loaded the documents into ECF No. 47. Plaintiff's original brief in opposition to defendant's summary judgment motion cited to the 37 original exhibits. This motion does as well. To assist the Court in locating the correct exhibit, please use the following legend:

| ECF 47 Exh. # | Goodman Exh. # |
| --- | --- |
| Exh. 1 | Goodman Exhs. 1-3 |
| Exh. 2 | Goodman Exhs. 4-5 |
| Exh. 3 | Goodman Exhs. 6-7 |
| Exh. 4 | Goodman Exhs. 8-9 |
| Exh. 5 | Goodman Exhs. 10-12 |
| Exh. 6 | Goodman Exh. 13 |
| Exh. 7 | Goodman Exh. 14 |
| Exh 8 | Goodman Exhs. 15-20 |
| Exh 9 | Goodman Exhs. 21-25 |
| Exh. 10 | Goodman Exh. 26 |
| Exh. 11 | Goodman Exhs. 27-29 |
| Exh. 12 | Goodman Exhs. 30-34 |
| Exh. 13 | Goodman Exhs. 35-36 |
| Exh. 14 | Goodman Exh. 37 |

company policy existed, Exh. 28, Figueroa Tr., pp. 52-53; treated Cargian more harshly and with less due process in a disciplinary matter than a heterosexual male sales representative, who was found to have falsified business reports for months, Exh. 13, Anderson Dep. Tr., pp. 102-103; Exh. 26, Amstutz Tr., pp. 118, 128-131; Exh. 27, Prissert Tr., pp. 61-62; excluded Cargian from promotional events, where only the heterosexual male representatives were invited, ECF No. 48, Cargian Aff., ¶ 37; demoted Cargian in function and salary and promoted Schafarth, a 33-year-old heterosexual man with no prior sales experience, to take over a substantial portion of Cargian's responsibilities, Pl's Rule 56.1 Statement, ¶¶ 205-296; and reduced his base salary from $230,000 to $196,000. ECF No. 40, Def. Rule 56.1 Statement, ¶¶ 120, 133-34. After erecting all of these barriers, Prissert finally terminated Cargian, replacing him with Schafrath, who was eventually terminated for lack of sales ability, poor sales, and bad work ethics, but given the option of staying on as a sales analyst. Exh. 14, Schafrath Tr., pp. 275-277, 296.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). "The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists". *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In assessing whether there is genuine issue as to any material fact, the Court is required to resolve all ambiguities and draw all permissible inferences in favor of the party

against whom summary judgment is sought. *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). The court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *See also Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464-65 (2d Cir. 1989).

The Second Circuit has repeatedly expressed "the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb*, 521 F.3d at 137*; See also Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70 (2d Cir. 2016). "An employer who discriminates is unlikely to leave a 'smoking gun'... attesting to a discriminatory intent." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991); *Ramseur, 865* F.2d at 465 ("clever men may easily conceal their motivations" (internal citation omitted)). Because there is rarely "'direct, smoking gun, evidence of discrimination'… plaintiff usually must rely on 'bits and pieces' of information to support [] inference[s] of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Vega v. Hempstead Union Free School District,* 801 F.3d 72, 86 (2d Cir. 2015).

A showing that an employer's alleged non-discriminatory reasons for its adverse actions are not the actual reasons for the adverse actions, can by itself be sufficient to overcome a motion for summary judgment. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if [the] disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reason will permit the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). Justice Ginsberg, concurring in *Reeves v. Sanderson*, *supra*, underscored this point writing, "the trier of fact can

6

reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. 133 at 148. Following Supreme Court guidance, in *Walsh*, Judge Hall stated, "[a] motion for summary judgment may be defeated where a plaintiff's *prima facie* case, *combined with sufficient evidence to find that the employer's asserted justification is false*, may permit the trier of fact to conclude that the employer unlawfully discriminated." 828 F.3d at 76 (emphasis added).

## *BOSTOCK*

The core holding of the Supreme Court's landmark decision in *Bostock v. Clayton County*, simply stated and centrally relevant here is that: "An employer violates Title VII, which makes it unlawful to discriminate against an individual 'because of' the individual's sex, by firing an individual for being homosexual or being a transgender person." 140 S. Ct. 1731 (2020). That ruling affirmed the Second Circuit's decision in *Zarda*, 883 F.3d at 131 ("[S]exual orientation discrimination is a subset of sex discrimination and is thereby barred by Title VII.") and means that Plaintiff's allegation that he was fired because he is a gay man states a claim of sex discrimination under Title VII.

As the Court reminds us, discrimination is simply defined by the dictionary as treating an individual differently or less favorably as compared to others not in his protected group. *Bostock*, 104 S. Ct. at 1740. The *Bostock* Court reinforced this principle and some of the other basic principles of Title VII law and evidentiary standards, relevant to this motion for summary judgment. The Court reiterated that under Title VII's "because of" test, liability attaches when "an employer…fires an individual employee based in part on sex. It doesn't matter if other factors

besides the plaintiff's sex contributed to the decision." *Id.* at 1741. The Court went on to

acknowledge that Congress, by amendment to the statute, adopted what Justice Gorsuch describes

as an "even more forgiving" standard of proof when it adopted the motivating factor standard of

proof in Title VII actions. *See* 42 U.S.C. § 2000e-2(m). As the Court said, by allowing plaintiff to

prevail "[u]nder [the] more forgiving standard, liability can sometimes follow even if sex *wasn't* a

but-for cause of the employer's challenged decision." *Bostock*, 104 S. Ct. at 1739-40.

     Defendant's motion points to several allegedly non-discriminatory rationales for Cargian's

termination and asserts that it has thereby met its burden of showing that it is entitled to summary

judgment. Defendant misses the point, so long as there is evidence from which a jury can

conclude that sex played a role in an adverse employment action, "it has no significance here if

another factor… might also be at work, or even play a more important role in the employer's

decision." *Id.* at 1744.

## THE CONTESTED EVIDENCE COMPELS DISMISSAL OF DEFENDANT'S MOTION

### A. *Prima Facie* Case

     Defendant's claim that even under *Bostock*, Plaintiff has not met the minimal burden of

establishing a *prima facie* case of discrimination based on sexual orientation is without merit. To

make out a *prima facie* claim of employment discrimination, a plaintiff must simply allege that:

(1) he belongs to a protected class; (2) he was qualified for the position he held; (3) he suffered an

adverse employment action; and (4) the adverse action occurred under circumstances giving rise

to an inference of discriminatory intent. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d

119, 128 (2d Cir. 2012); *Sassman v. Gamache,* 566 F.3d 307, 312 (2d Cir. 2009) ("[P]laintiff's

burden of establishing a *prima facie* [Title VII] case is *de minimis.*" (internal citations omitted));
*Holcomb,* 521 F.3d at 138.

In the instant matter Plaintiff meets and exceeds his *de minimis* burden, establishing a
*prima facie* claim of sexual orientation discrimination: (1) It is conceded that under *Bostock* he is
a member of the protected class; (2) he was more than minimally qualified for his job, having 23
years of successful employment and promotion; (3) it is conceded that he suffered several adverse
employment decisions, including demotion, loss of pay and ultimately termination; and (4) he was
replaced by a significantly less qualified heterosexual man. Replacing plaintiff with a person
outside his protected class satisfies plaintiff's *prima facie* burden. *Littlejohn v. City of New York*,
795 F.3d 297, 313 (2d Cir. 2015).

Defendant mistakenly claims that this Court in its prior ruling already determined that
summary judgment was appropriate even if the law covered sexual orientation. Surely if that was
the case this Court would have dismissed, with prejudice, the state and city law claims, where the
statutes prohibit sexual orientation discrimination, rather than dismiss them without prejudice.
The only analysis the district court made of any of the facts submitted by the parties on the prior
motion for summary judgment is whether Plaintiff met the fourth prong of the *McDonald
Douglas* standard for establishing a *prima facie* case of sex-stereotyping discrimination. The
district court found Plaintiff could not establish a *prima facie* claim of sex stereotyping because,
under *Dawson,* he had to demonstrate a physical or a behavioral mannerism which is outside the
general stereotypical norm. Finding none, the court held Plaintiff was simply conflating his sex
discrimination claim with sex stereotyping. The district court never addressed the factual issue of

9

whether Defendant had articulated a legitimate non-discriminatory reason for the adverse action or whether Plaintiff had produced evidence that such a purported reason was pretext for discrimination. The prior decision rests solely on the law, and does not address the facts as related to summary judgment.

### B. Defendant's Alleged Defenses

Once a *prima facie* claim is established, Defendant has the limited responsibility of articulating a legitimate non-discriminatory reason for the adverse actions it took. Defendant alleges it terminated Plaintiff because of poor work performance, particularly his failure to meet sales goals over 3 years; his lack of hard work; his bad attitude; his failure to visit clients and for violation of company policy. Defendant further claims that it reduced his salary because Plaintiff's territory was reduced and that the territory reduction was to help Cargian succeed. Finally, Defendant claims it fired Cargian because he was the worst performing sales representative in 2013.

The burden now shifts back to plaintiff to demonstrate that the stated reasons are not the actual reasons, but merely pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). "A motion for summary judgment may be defeated where a plaintiff's prima facie case, *combined with sufficient evidence to find that the employer's asserted justification is false*, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Walsh*, 828 F.3d at 76 (emphasis added).

10

### C. Plaintiff Has Produced Evidence That Defendant's Alleged Rationales Are Pretextual

There is compelling documentary and testimonial evidence from which a reasonable juror could conclude that defendant's alleged rationales are pretextual. Moreover, plaintiff's testimony, based on his personal knowledge – even if it is uncorroborated – can also create an issue of fact for trial. *Yang v. Navigators Group*, 674 Fed. Appx. 13, 15 (2d Cir. 2016).

### 1. Failure to Meet Goals

Defendant's first act of discrimination (differential treatment) was when the new president, Prissert, set unattainable and unrealistic sales goals for Cargian in 2011. Cargian's sales goals were set higher than any other sales representatives, all of whom were heterosexual. Plaintiff's 2011 sales goals were raised by close to $12M or 92%. None of the other sales representatives' goals were raised by more than $7M or 63%. Exh. 4, Def. Resp. to Admissions ¶¶ 33-54. Prissert does not contest these facts, but unpersuasively attempts to deflect the issue in an uncorroborated allegation that Bodman, who is not accused of a discriminatory attitude toward Cargian, set his 2011 sales goal. ECF No. 39, Exh. B, Prissert Aff. ¶ 22. Plaintiff directly contradicts Prissert's statement. Exh. 9, Cargian Tr. 208:7-8; 225: 15- 226: 14; 222: 25- 223:16. A jury does not have to believe the uncorroborated testimony of an interested witness, such as Prissert. *Reeves*, 530 U.S. at 151. Moreover, as the new President, it was well within Prissert's control and responsibility to overturn any unreasonable proposal made by his predecessor.

Defendant further justifies the 2011 increase in sales goals by 92% on the grounds that Plaintiff's territory was increased. Defendant's alleged rationale is uncorroborated and directly contradicted by the evidence.

11

Haley, a heterosexual male sales representative, also had his territory increased in 2011 and by an even greater range than Cargian's, yet his sales goals were only increased by 63%, in contrast to Cargian's 92% increase in sales goals. Exh. 2; Exh. 4, Defendant's. Admission. ¶¶ 34-36; 47-48.[5]

A reasonable juror could easily dismiss Defendant's assertion in light of the contradictory treatment of Cargian as compared to his heterosexual comparators, like Haley. Arbitrary manipulation of goals to get rid of an employee, or save bonus money, is not unheard of. In this case, the desired results were achieved. Plaintiff could not and did not meet the unattainable sales goal set for him by Prissert. Plaintiff's bonus was adversely impacted by this. However, it must be noted that Plaintiff still increased his 2011 sales goals over his 2010 sales figures by $4M. ECF No. 48, Cargian Aff. Exh. A.

Defendant now alleges failure to meet the unattainable goals as one of the reasons Cargian was fired. In reality, this increased pressure was designed to pepper his employment files with failure to meet sales goals, and ultimately it was used as pretext for Defendant's ultimate motive: Plaintiff's termination because of his sexual orientation.

---

[5] Defendant has continually tried to hide the ball on this comparative information. Plaintiff, in his request for admissions, put forward what he thought were the accurate numbers as to how many doors each rep had in 2010 and then in 2011. Defendant denied the number put forth by Plaintiff as to Cargian and Haley, yet refused to qualify the response as required by the Rules. Exh. 2 at ¶¶ 1, 2, 4-5, 9. Under summary judgment standards the inference is to be drawn in Plaintiff's favor.

### 2.   Demotion and Salary Reduction

In December 2012, Prissert informed Plaintiff that he was removing a substantial portion of his sales territory. This reduction included Maryland, the District of Columbia and Northern Virginia, about 9 doors. This unilateral reduction reduced Plaintiff's responsibilities, position, and sales ability. Prissert then reduced Plaintiff's salary by $35,000 to $195,000. ECF No. 48, Cargian Aff. ¶ 23.

Prissert asserts, without corroboration, that the territory reduction was an attempt to help Plaintiff by lightening his load. *Id.* at ¶ 23. A jury would be entitled to conclude that this statement is untrue and not the real reason, but pretext for discrimination. This assertion is belied by the fact that notwithstanding having less territory to make sales, Prissert substantially increased plaintiff's sales goals once more, and again that increase was significantly higher than the increases for Plaintiffs' heterosexual comparators. Plaintiff's sales goals were increased by 14% while the heterosexual representatives' sales goals were only raised between 8% and 10%. Exh. 25.[6]

A reasonable juror would see the glaring inconsistencies in Prissert's stated purpose versus the actions he took. In 2011, Prissert assigns the highest sales goals to Cargian because Cargian had an **increase in** sales territory. Then in 2013, Prissert again increases Cargian's sales goals by the highest percentage in comparison to his comparators, but this time it is because he **reduced** his sales territory. Defendant does not even attempt to explain this glaring inconsistency.

---

[6] Sommer's territory which she shared with Cargian was also reduced and her goals were also increased.

Moreover, another heterosexual sales rep, Cawthorne, had his territory reduced that year, yet Cawthorne's salary was not reduced. Indeed, his salary was increased. Exh. 4, Defendant's Admissions ¶ 32. On a summary judgment motion, the inferences weigh in Plaintiff's favor. That inference and the reality here is that Prissert's stated reason for the adverse actions is not the actual reason for the adverse actions.

### 3.   Replacement by an Unqualified Heterosexual Man

In a failed attempt to explain the promotion of Schafrath to take Cargian's sales territory, Prissert asserts that "[b]ecause I had reduced Plaintiff's and Ms. Sommer's sales territory, I determined that Breitling needed to add an additional sales representative to cover the accounts/doors in the territory that I had removed from Plaintiff's and Ms. Sommer's responsibility."  ECF No. 39, Singer Aff., Prissert Decl. ¶ 38.

A reasonable jury would be entitled to conclude that Prissert's statement is not the real reason but pretext for discrimination. The evidence demonstrates that starting at the latest in the spring of 2012, Prissert was laying the ground work to terminate Cargian and promote Schafrath to Cargian's position. Prissert was the only person who proposed promoting Schafrath to the position of sales representative, Exh. 13, Anderson Tr. 323:5-13, and this happened earlier in 2012, before Cargian's performance results were known. Exh. 14, Schafrath Tr. 61:3-62:16. In October 2012, Schafrath was spontaneously called in for conversations with Prissert regarding a promotion to the position of sales representative. A series of conversations[7] followed at the end of

---

[7] The progression of the discussion regarding Schafrath's promotion can be found at Exh. 4, Tr. 105, 131.

October 2012, at which he was told that they "hope they could find a place for him." *Id.* at 108:12-19.

The claim that an eighth sales representative was needed to take over the territory removed from Cargian and Sommer is belied by the fact that after Cargian was fired, Schafrath took over most of Cargian's remaining territory, and an eighth sales representative was never hired. In explanation of this, Anderson gave uncompelling testimony claiming that although he saw a need for an eighth sales representative in 2013, after they fired Cargian and further promoted Schafrath to take over the majority of Cargian's territory, he saw no further need for an eighth sales representative. When pressed as to why he felt that Breitling suddenly did not need an eighth sales representative, when only a few months earlier one was allegedly needed, the best response Anderson's could come up with was, "I just felt that way." Exh. 13, Anderson Tr. 84:4-85:24.

### 4.   Cargian Was Terminated Because of Failing Sales

Defendant claims that it fired Cargian because of failing sales, but a jury could conclude that Defendant's rationale is not the true reason but merely pretext for discrimination based on the following facts. Plaintiff was replaced by a heterosexual man with no sales experience or any discernable qualifications for the position of sales representative, which undermines any claim that Cargian's termination was because of his poor sales and Defendant's need to bring on a more productive sales person. A jury would be justified in questioning why a business person making legitimate business decisions would hire a totally unqualified and inexperienced replacement with no demonstrated ability to increase business. It is conceded that Schafrath had no objective qualifications that would make him suitable for a promotion to sales representative. It is conceded

15

that Prissert was aware of these facts. Schafrath had been unsuccessfully trying for a promotion at

Breitling for seven years. He was regularly rejected by Prissert's predecessor, Bodman and her

administration. Exh. 14, Schafrath Tr. 87:4-18. Schafrath was the Vault (Logistics) Manager,

meaning he maintained inventory, credit returns and was generally responsible for the safe

keeping of the watches. Exh. 32, Vault Manager's Job Description. Schafrath had no employment

experience prior to Breitling that would qualify him for the position of sales representative, let

alone experience anywhere near comparable to Plaintiff. Prior to Breitling, Schafrath had been a

bartender, kitchen assistant, a carpenter's assistant, and video production assistant for the Ohio

State University football team. Exh. 31, Schafrath Resume. The only thing that changed and

influenced his promotion was the hiring of Prissert.

Schafrath himself was concerned about his lack of experience, and although Prissert never

asked, he raised the issue at the interview. Prissert responded that he "knows (Schafrath) well

enough that he has faith that he could do the job." When asked how Prissert knew him, he

responded, from around the office including from their sports discussions. Exh. 14, Schafrath Tr.

118:12 --119:18. What he did have is a heterosexual macho background. *Id*. at 76:18-78:16.

Seemingly, Schafrath's only new qualifications were being heterosexual and into sports. Being

part of the "boys club" that Prissert created brought Schafrath significant success, even after

seven years of rejection based on merit. As one might expect, given his lack of qualifications,

Schafrath failed, tremendously. Schafrath's sales were low and his work ethic appeared to be the

primary problem. He was unresponsive to management, generally unavailable and not fulfilling

his reporting obligations. Nonetheless, he was not fired for poor sales or work ethic, as Cargian

was allegedly fired for. Instead, a new position was created for him as a sales analyst, assisting

Prissert and Anderson, which was essentially a promotion from his Vault Manager position. *Id.* at 276:5-277:18, 293:5-19, 296:2-297:23.

A reasonable jury could conclude that Prissert did not fire Cargian because of failing sales, but instead because he wanted to move the gay man out and put in his place a sports-loving heterosexual man, despite his obvious lack of qualifications.

### 5. Cargian Was Terminated Because He Was the Least Productive Sales Representative in 2013.

There is plenty of evidence from which a jury could conclude that Prissert's claim that Cargian was the least productive sales representative in 2013 was not the real reason and pretext for discrimination. The sales records for 2013 directly contradict this claim. Sales were down companywide by about $9M or 8.9%. Exhs. 5 & 16. Two of the seven sales representatives had worse sales figures than Plaintiff. The worst performer was Representative "X,"[8] who was down 20.6%. Representative "X" made only 70% of his sales goals while Cargian reached 79% of his goals. Cargian opened two new stores, Representative "X" opened none and Cargian was more proactive, making more customer visits than Representative "X." Exh. 36, 2013 Bonus Papers. Moreover, Representative "X" is the sales representative who committed a serious ethical breach

---

[8] In 2013, Sales rep "X" was found guilty of falsifying company records, claiming to be visiting clients when in fact he was on personal trips, and cheating on his expense account. Although Defendant in the past had no compunction about publicly revealing the name of the wrong doer (Singer Aff., Exh. B, Prissert's Aff. ¶ 54), which Plaintiff believes may have violated Connecticut law and was not necessary at this stage, to the extent possible and where appropriate, as Plaintiff has done in past briefs, he will continue to refer to him as Representative "X"

by submitting false business records. Notwithstanding all of this, Representative X, who is heterosexual, was not fired, but Cargian was.

### 6.  Cargian's Had a Bad Attitude

A reasonable jury could conclude that Defendant's claim that it fired Cargian for having a bad attitude was not true and a pretext for discrimination. In *January 2013*, Bodman provided Cargian with a reference letter praising him for "his dedication to the job…his integrity…attention to detail… knowledge of the watch industry… and [for being] entirely reliable." ECF No. 48, Cargian Aff., Exh. B. At the time she wrote this reference letter, Bodman was an employee of Breitling SA, Breitling's parent company. Deposition testimony further attests to Cargian's commitment to his job and cooperative spirit. Melissa Vessely ("Vessely"), the Training Manager hired by Prissert in 2012 who worked with Cargian in 2012 and 2013 described him as "very knowledgeable and well respected by the team."  She described Cargian as "cooperative, liked by clients, helpful and generally did a good job." Exh. 8, Vessely Tr.; 95:24-96:23; 100:20-24; 110:14-17,  Lisa Roman ("Roman") the former Marketing Director, hired in 2002, testified that Cargian was "respected by Bodman"; he was "one of the top sales reps from 2002-2010"; "had an outstanding reputation", was "easy to work with, responsible, responsive to his accounts" and was good at getting accounts to marketing events that Roman organized. Exh. 7, Roman Tr. 77:9-79:4; 97:23-98:1; 85:14-87:6.

### 7.   Cargian Failed to Consistently Visit Accounts

Defendant alleges that Plaintiff was basically lazy, announced that he only worked 9am to 5pm, did not make required service calls and showed a disinterest in work. Once again, a reasonable jury could conclude that this reason is fabricated and pretext for discrimination.

Defendant's own record shows that in 2012, Cargian made a total number of 332 customer visits for an average of 7.72 per week, the second highest among the sales representatives. Haley made 292 visits, Lambert made 133 visits and Cawthorne made 219 visits. Exh. 33. Cargian's compensatory time or "comp time" records show that he did not use most of the time to which he was entitled in 2012. Exh. 24.

### 8.   Cargian Violated Company Policies

Defendant claimed that Plaintiff violated company policy prohibiting cash gifts to support staff at Christmas and officially issued a letter of reprimand. There is evidence here, too, that this is not true and pretext and a reasonable jury could agree.

Diane Figueroa, the Manager of Human Resources, testified that there was no such prohibition and she saw no wrongdoing in Cargian's actions. Exh. 28, Figueroa Tr. 52:7-53:25.

### 9.   Cargian was Allegedly Disrespectful in 2012.

Though not reintroduced in this renewed motion, Defendant previously alleged and may well introduce on rebuttal, that Plaintiff was disrespectful of Prissert. Defendant alleges that Plaintiff publicly cursed him, using foul and/or offensive language. But there is ample evidence for a jury to conclude that Cargian was not disrespectful and instead that this claim is a pretext for

discrimination. The facts of the alleged incident are hotly disputed with both Cargian and Sommer contradicting Prissert's uncorroborated allegation. Cargian Aff. ¶31, Exh. 12, Sommer Tr. 87:16-89:13. Equally important, is the fact that Prissert took disciplinary action against Plaintiff without ever investigating or talking with him. Cargian Aff. ¶ 32. In contrast, months of investigation went into review of Representative "X," who submitted fraudulent business records and no action was taken against him until management interviewed him to decide what action, if any, to take. Exh. 26, Amstutz Tr. 130:6—132:13; 218:11-219:21. Further, the alleged incident involving Plaintiff happened a year and several months before Plaintiff was fired. There were no further allegations or disciplinary actions in the next year and 4 months. In contrast, Representative "X" falsified records in 2013 – thereby stealing money – but received only a written reprimand from the HR Director just a few months before the decision to terminate Cargian was made.[9]

On summary judgment, where all inferences must be drawn in favor of the non-moving party, a reasonable jury could easily discern from the documentary and testimonial evidence that Defendant's asserted reasons for demoting Plaintiff and reducing his salary were not the actual reasons for his termination. The actual reason is that Prissert favored and wanted to promote a younger, heteronormative, heterosexual male with whom he could talk sports, to replace the aging gay sales representative.

---

[9] It should also be remembered that Representative "X" had the worst performance of all the sales representatives in 2013. Exh. 16. He made the fewest calls, but still received a significant bonus. Exh. 36

### D.  Evidence of Sex-Based Animus

Plaintiff submits that a reasonable juror could find for Plaintiff based on pretext alone, so Defendant's motion for summary judgment should be denied based solely on the evidence discussed above. However, there is also evidence of animus toward Cargian as a gay man. Prissert established a "boys club" atmosphere which excluded Cargian, the one gay male sales representative and the "girls" (two female sales representatives) from his inner circle. Beth Haddad, one of the two female sales representatives, submitted a written complaint charging Prissert with discrimination against female employees, creating a "boys v. girls" environment. Exh. 20. Both Lisa Roman, the Training Manager, and Annie Sommer, the second female sales representative, testified that Cargian, along with the "girls," was excluded from Prissert's inner circle. Exh. 7, Roman Tr. 99:2-99:15; 101:12-101:21; Exh. 12, Sommer Tr. 11:13-11:22. Both of the female sales representatives and other employees, like Lisa Raymond, testified that the "boys club atmosphere" focused a great deal on what was known as "sports talk," that excluded them. They also testified that Cargian was excluded in the same way as the female employees. ECF No. 46, Pl. Rule 56.1 Counterstatement ¶¶ 172-174. From his actions, it is clear that Prissert viewed Plaintiff, a gay man, as something less than a "real" man and subjected him to the same inferior treatment he accorded women, because of their sex and Mr. Cargian's sexual orientation.

Breitling assigned Plaintiff to share a room at a business conference with a female colleague, Sommer. Cargian and Sommer both testified that this was inappropriate and offensive to the both of them and further evidence that Defendant considered a gay man to be one of the "girls" rather than being one of the heterosexual guys. Exh. 12, Sommer Tr. 16:21-17:6. Defendant claims that on multiple occasions, Cargian and Sommer shared a room, and that this

assignment was therefore acceptable to them. This is a disputed issue where the credibility of the witnesses is at the heart of the issue. ECF No. 46, Pl. Rule 56.1 Counterstatement ¶¶ 12, 141, 146, Cargian Aff. ¶ 37. This is an issue for a jury to resolve, not this honorable court.

Exclusion from the "boys club" had a detrimental effect on Cargian's business opportunities and employment at Breitling. Cargian was not invited to marketing events which afforded the sales representatives opportunities to interact with customers, which enhanced sales opportunities. For example, in 2012, all of the heterosexual male sales representatives were invited to the major Bentley marketing event in Crewe, England. Cargian was not and neither were the two female sales representatives. Cargian Aff. ¶ 37. There was also a marketing event at an air show in Bouces, Switzerland, where Cargian's heterosexual male colleagues were invited, but he was not, nor again, were any of the women. *Id.*

Defendant never denies the allegations that part of the exclusionary behavior revolved around sports talk among the men. Rather, Defendant attempts to minimize the importance of Plaintiff's exclusion from Prissert's inner-circle by arguing that conversations revolving around sports are not stereotypically male, and individuals may have been excluded simply because they are not interested in sports. A reasonable juror could find that Prissert had the stereotypical view that sports was a topic around which "real" men (heterosexual men) bonded. Whether some gay men or girls "talk sports," however, is not the issue. The significance of the use of sports talk, likely the commonly used coded phrase, "locker-room talk," was that it was a mechanism engaged in by Prissert to isolate Plaintiff because he viewed Plaintiff as feminine based on his

sexual orientation. Nowhere does Defendant offer any uncontroverted evidence that he did or attempted to include Plaintiff or women in this inner circle.

When the President of a company engages in behavior that excludes a protected group, its impact is not *de minimis*. "A jury could find that the exclusionary culture fostered by [supervisors] evidence[] a biased attitude toward [the excluded group]." *Zakre v. Norddeutsche Landesbank Girozentrale,* 396 F. Supp. 2d 483, 508 (S.D.N.Y. 2005). *See also Bryson v. Chicago State Univ.,* 96 F.3d 912, 917 (7th Cir. 1996). These exclusionary tactics directly impact an employee's status in the workplace and reflects an animus toward the excluded group. Schafrath's promotion is a prime example. He had direct access and contact with Prissert, whom he "knew around the office" and through sports talk, which eventually resulted in his promotion despite the lack of any discernable qualifications or experience. Exh. 14, Schafrath Tr. 74:22-78:16.

It is by no means a stretch to conclude that a reasonable juror could find Prissert's categorization of a gay man, Cargian, as one of the girls, to be evidence of animus against gay men. Seemingly, under Prissert, "real" men are exclusively heterosexual, into sports and comfortable in the atmosphere of toxic masculinity created by Prissert, whereas women were treated as outsiders and objectified as marketing devices. Cargian, as a gay man, romantically attracted to men, was viewed by Prissert as something less than a man, more like a girl. Consequentially, he was afforded the inferior, unlawful treatment to which female employees were also exposed.

**CONCLUSION**

Mr. Cargian's case falls within the area of caution alerted to by the Second Circuit. There is no "smoking gun." Rather, it is the cumulative weight of the totality of the evidence of disparate treatment that must be considered. Taking the evidence in its totality, Cargian has adequately adduced facts from which a jury could reasonably find that Defendant's rationales for the adverse actions taken against him are pretextual. Cargian has adequately adduced facts from which a jury could infer discriminatory motive and unlawful animus towards gay people, a protected class under Title VII and state and city laws. Plaintiff does not have to establish that sexual orientation-based animus was the sole reason. Plaintiff's burden is to produce facts from which a jury could conclude that invidious discrimination on the basis of sexual orientation played a motivating role in his adverse treatment in his employment with Defendant. Plaintiff has more than met his burden. Defendant's renewed motion for summary judgment must be denied.

Respectfully submitted,

*/s/ Janice Goodman*
Janice Goodman

Taylor Brown
James Esseks
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2593
Fax: (212) 549-2650
tbrown@aclu.org
jesseks@aclu.org

cc:     All counsel of record via ECF

24