

**Fox Rothschild LLP**
ATTORNEYS AT LAW

101 Park Avenue, Suite 1700
New York, NY 10178
Tel 212.878.7927  Fax 212.692.0940
www.foxrothschild.com

GLENN S. GRINDLINGER
Direct No: 212.905.2305
Email: GGrindlinger@FoxRothschild.com

December 23, 2020

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
  for Southern District of New York
500 Pearl St.
New York, NY 10007

      Re:    **Cargian v. Breitling USA, Inc.**
              **Civil Action No.: 15-cv-01084**

Your Honor:

      Pursuant to the Court's October 8, 2020 Order and Rule 56 of the Federal Rules of Civil Procedure, Defendant Breitling USA, Inc. ("Breitling") submits this reply letter in further support of its renewed Motion for Summary Judgment to dismiss all of Plaintiff Frederick Cargian's ("Plaintiff") remaining claims.

      Plaintiff's December 9, 2020 Opposition Letter to Defendant's renewed Summary Judgment Motion ("Opposition Letter") does nothing to defeat the arguments set forth in Breitling's moving papers that summary judgment is warranted. Instead, Plaintiff relies on speculation and conjecture in a futile effort to establish that Breitling's business decisions were a pretext for discrimination. In essence, as is prohibited by applicable law, Plaintiff's Opposition Letter asks this Court to act as a "super personnel" department to second guess Breitling's business records, sales data, and years of constructive criticism, all of which establish Breitling's legitimate business decisions. This is not the purview of the judicial system. Moreover, the Opposition Letter cites to no evidence that demonstrates any connection between Plaintiff's sex orientation and any adverse action taken against him. Accordingly, Breitling's renewed motion should be granted.

      **Preliminary Issues**

      Before addressing the substance of Plaintiff's Opposition Letter, Breitling notes Your Honor's October 8, 2020 Order allowed the parties to submit letters to address the Supreme Court's recent decision in *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731 (2020) and its impact on

Hon. George B. Daniels
December 23, 2020
Page 2

Breitling's initial summary judgment motion.  *See* Dkt. No.  82.  However, it appears that Plaintiff's Opposition Letter goes well beyond this Court's October 8th Order.  Accordingly, Breitling must respond to the allegations set forth in Plaintiff's Opposition Letter.

Moreover, this is not the first time that Plaintiff has taken advantage of this Court's Orders and Rules.  When Plaintiff filed his opposition to Breitling's original Motion for Summary Judgment, Plaintiff concurrently filed a document called "Plaintiffs' Rule 56.1 Response," *See* Dkt. No. 44-1. As Breitling noted at that time, Plaintiffs' Rule 56.1 Response violated Local Rule 56.1 and should not be considered.  In the section of Plaintiff's 56.1 Response that purports to respond to Defendants 56.1 Statement of Undisputed Material Facts, Dkt. No. 40, Plaintiff fails to contravene Breitling's undisputed facts or to address their actual substance.  Instead, he interjects improper qualification, argument, and commentary.  *See* Dkt. No. 55, at n. 2.  Accordingly, virtually all of the undisputed material facts set forth in Dkt. No. 40 should be deemed admitted.[1] *See Wright v. Goldman, Sachs & Co.*, 387 F.Supp.2d 314 (S.D.N.Y. 2005) (unsupported, conclusory assertions and denials could not refute a movant's Rule 56.1 Statement, and courts in this circuit have not hesitated to deem admitted facts in a Rule 56.1 Statement that have not been controverted by the nonmoving party); *Baity v. Kralik*, 51 F.Supp.3d 414, 419 (S.D.N.Y. 2014) (disregarding responses to Rule 56.1 Statement that had conclusory assertions, legal arguments).

Accordingly, Plaintiff's Rule 56.1 Response should be stricken, and Plaintiff's citations to same in his Opposition Letter should be ignored.

### Plaintiff's Opposition Letter Does Not Contravene The Fact That Summary Judgment Should be Granted to Breitling

As with his opposition to Breitling's original Motion for Summary Judgment, the Opposition Letter tries to throw a lot of spaghetti at the wall, hoping that something will stick.  However, the undisputed, material facts show that Breitling had legitimate business reasons for all of the actions taken against Plaintiff and his Opposition Letter cannot demonstrate that any of Breitling's actions were pretextual.  It is clear that, other than his own conjecture and speculation, there is simply no evidence to suggest that any adverse actions taken by Breitling against Plaintiff were based, in whole or in part, on Plaintiff's sexual orientation.

Plaintiff's Opposition Letter relies essentially on two arguments.  First, he claims, without any support, that Plaintiff can easily meet the burden necessary to establish a *prima facie* case of

---

[1] Furthermore, Plaintiff's Rule 56.1 Counter-Statement (contained within Plaintiff's 56.1 Response), Dkt No. 44-1, also violates Local Rule 56.1 in that it largely contains argumentative characterizations that are not supported by citations to the record.  *See* Dkt. No. 55, n. 5.  As such, nearly all of the material facts identified in Plaintiff Rule 56.1 Response should not be considered by the Court.  *See id.* at pp. 29-38.

Hon. George B. Daniels
December 23, 2020
Page 3

discrimination. However, as detailed in Breitling's opening letter, Plaintiff cannot meet this burden. There are simply no facts – none – to show a casual connection between the adverse actions taken against him and Plaintiff's sexual orientation. This is fatal to his claim.

Second, Plaintiff's Opposition tries to assert that Breitling's articulated reasons for its actions were pretextual. Yet, the Opposition Letter omits key facts, relies on inadmissible evidence, and otherwise contradicts the prior findings of this Court. Accordingly, this Court should grant Breitling's renewed Motion for Summary Judgment.

1.  <u>Plaintiff Cannot Establish A Prima Facie Case of Discrimination</u>

Plaintiff fails to establish a *prima facie* case of discrimination. He has not shown that Breitling took any adverse employment actions against him *because* of his membership in a protected class.

Plaintiff's contention that he was treated differently because of his sexual orientation relies on nothing more than speculation and conjecture. The Opposition Letter does not even reference any evidence that would support a conclusion that Breitling, Thierry Prissert, or anyone else had any animosity towards Plaintiff based on his sexual orientation. In the absence of any such evidence (or anything else), Plaintiff cannot establish that Breitling's actions were motivated by discrimination. *See Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful") (quoting *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998)); *Ochei v. All Care / Onward Healthcare*, No. 07 Civ. 0968, 2009 U.S. Dist. LEXIS 28993 at *29 (S.D.N.Y. 2009) (Plaintiff's "unsupported speculation" that he suffered sexual orientation discrimination is wholly insufficient to meet his *prima facie* burden.).

Instead, Plaintiff's Opposition Letter claims that he was replaced by a person outside his protected class and that is sufficient to satisfy his burden. Plaintiff also claims that "Defendant mistakenly claims that this Court's prior ruling already determined that summary judgment was appropriate." Dkt. No. 85 at p. 10. Plaintiff is incorrect on both accounts.

Plaintiff asserts that he only needs to allege that he was replaced by someone outside his protected class to satisfy his burden of proving a *prima facie* case of discrimination. However, at the summary judgment stage, the Second Circuit has stated that a plaintiff cannot rely simply on conclusory assertions, but instead, "must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination . . . was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and alterations omitted). Plaintiff presents no such evidence.

Hon. George B. Daniels
December 23, 2020
Page 4

Second, contrary to Plaintiff's Opposition Letter, this Court did hold that summary judgment was appropriate even if the law, at that time, did not cover sexual orientation discrimination. Indeed, after explaining that Plaintiff conflated sexual orientation discrimination with gender-stereotyping, the Court stated:

> Moreover, Plaintiff has failed to show that he suffered an adverse employment action under circumstances giving rise to an inference of intentional discrimination based upon Plaintiffs membership in a protected class....There is no record evidence on which a rational finder of fact could conclude that Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on the basis of Plaintiff's gender.

Dkt. No. 63 at pp. 8-9. This language clearly indicates that that summary judgment was appropriate even if the law covered sexual orientation discrimination, which the *Bostock* Court held was simply a form of gender discrimination. *See Bostock,* 140 S.Ct. at 1737 ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids.").

Plaintiff tries to argue that if summary judgment should have been awarded to Breitling, then the Court would have granted summary judgment to Breitling on Plaintiff's state and city law claims. However, the fact that this Court declined to exercise supplemental jurisdiction over Plaintiff's state and city law claims is irrelevant to the fact that this Court previously held that summary judgment should be awarded to Breitling on Plaintiff's Title VII claim irrespective of whether sexual orientation discrimination was cognizable. Accordingly, this Court should grant Breitling's renewed Motion for Summary Judgment.

        2.    <u>Plaintiff Cannot Show That Breitling's Stated Reasons Are A Pretext For Unlawful Discrimination</u>

Just as Plaintiff's Rule 56.1 Response is improper, his Opposition Letter relies on an inappropriate and inadmissible attorney affirmation in an effort to create genuine issues of material fact where none exists. Such improper tactics should not be rewarded.

Plaintiff's Opposition Letter unsuccessfully tries to establish pretext by addressing five different issues: (i) Plaintiff's sales goals and performance; (ii) his salary reduction; (iii) the promotion of Isaac Schafrath; (iv) the warnings that Plaintiff received; and (v) Plaintiff's poor attitude. Each is unpersuasive and unavailing.

### A. *Plaintiff's Poor Sales Performance*

The undisputed evidence shows that during his last three years at Breitling, Plaintiff's sales numbers were consistently lower than the other sales representatives, and he consistently failed to meet his sales goals:

- 2011: Plaintiff's sales were last out of the seven sales representatives as compared to the sales from the region the prior year. *See* Dkt. No. 40 at ¶¶ 99-103. He was also last in percentage of his sales goal achieved, having only met 79% of his sales goals. *Id.*

- 2012: Plaintiff's sales were last out of the seven sales representatives as compared to the sales from the region the prior year, and last with regard to percentage of his sales goal achieved (83.76%). *See* Dkt. No. 40 at ¶¶ 109-113.

- 2013: Plaintiff was tied for second to last out of the seven sales representative with regard to percentage of his sales goal achieved (79%). *See* Dkt. No. 40 at ¶ 120.

To support these facts, in addition to uncontroverted witness testimony and declarations, Breitling submitted: (i) Plaintiff's sales summaries given to him every year at his review (*see e.g.* Dkt. No 39, Exhibits ("Ex.") "DD" and "HH"); (ii) PowerPoint presentations of yearly sales numbers and sales goals, presented publicly to all sales representatives (*see id.*, Ex. "K"); and (iii) copies of sales summaries that were emailed to sales representatives for review (*see id.*, Exs. "GG" and "JJ"). Breitling explained how its sales data is calculated, stored, and regularly presented to the sales representatives. *See* Dkt. No. 40 at ¶¶ 42-50.

Plaintiff disputes his 2011 sales goals by claiming that his 2011 sales goals were increased by a far greater amount than the other sales representatives. However, these sales goals were not set by Prissert, the alleged discriminator, but rather they were set by Marie Bodman, who Plaintiff does not accuse of discrimination. *See* Dkt. No. 40 at ¶ 97. Plaintiff attempts to avoid this "inconvenience" by now asserting that Prissert had the ultimate responsibility for setting his 2011 sales goals. Yet, Plaintiff has no personal knowledge as to who set his 2011 sales goals; he played no role in the process of setting the goals. Thus, his assertion as to who set his 2011 sales goals is pure speculation and should be rejected.[2] *See Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 131 n. 12 (2d Cir. 2004) (district court free to disregard speculation in affidavits); *Flaherty v. Filardi,* 2007 WL 163112, *4–5 (S.D.N.Y. Jan. 24, 2007) (disregarding inadmissible portions of plaintiff's affidavit in analyzing summary judgment motion). Logic also dictates that it was

---

[2] In fact, Plaintiff testified at deposition that it was his understanding that Prissert, Anderson, *and* Bodman jointly set his sales goals. *See* Dkt. No. 44-17 at ¶15. Now he claims, without support, that it was solely Prissert. At the very least, Plaintiff conceded that Prissert was not the only person responsible for setting his 2011 sales goals.

Bodman who set Plaintiff's 2011 sales goals, as Prissert had just started at Breitling and Bodman was showing him the process of setting the sales representatives' sales goals. *See* Dkt No. 40 at ¶¶ 16-19. Further undercutting Plaintiff's claim of "unfair" sales goals is that although he claims his 2012 sales goals were also set unfairly high (*see* Dkt No. 44-17 at ¶ 19), he submitted his *very own* proposed 2012 sales goals to Breitling, which were virtually the same number that was actually set as his 2012 sales goals. *See* Dkt No. 40 at ¶¶ 38, 104-105. Plaintiff does not even allege that his 2013 sales goals, which he did not achieve, were unfairly set. Therefore, Plaintiff's complaints about his sales goals does not establish pretext.

Next, Plaintiff claims that his poor sales performance was a pretext for discrimination. This is utterly illogical as the evidence clearly demonstrates that Plaintiff's sales performance fell well below that of his co-workers. Breitling's admissible uncontroverted documentation supports its legitimate business reason for Plaintiff's termination - his low sales performance and failure to meet sales goals. In response, Plaintiff asks the Court to become a "super personnel" department to second guess Breitling performance criteria for its employees. *See Faldetta v. Lockheed Martin Corp.,* 2000 WL 1682759, at *9-10 (S.D.N.Y. Nov. 9, 2000)("Absent evidence of discrimination, it is not the province of the Court to sit as a super-personnel department that reexamines an entity's business decisions."). This is not permitted. The clear, irrefutable evidence shows that Plaintiff had poor sales for his final years of employment at Breitling, which ultimately led to the termination of his employment. As such, Plaintiff's poor sales performance is not pretextual.

Plaintiff also argues that because his job performance prior to 2011 was allegedly superior, the criticism he received and the decline in his performance under Prissert's supervision must have been pre-textual. Plaintiff is incorrect for at least two reasons.

First, Plaintiff's uncorroborated allegations regarding his performance prior to 2011 are irrelevant because "sudden and unexpected downturns in performance reports cannot, by themselves, provide the basis for a discrimination action." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *Garrett v. Garden City Hotel, Inc*., No. 05-cv-0962, 2007 U.S. Dist. LEXIS 31106, at *45-46 (E.D.N.Y. Apr. 19, 2007) (plaintiff's receipt of good performance evaluations in the past, standing alone, does not create a genuine factual issue as to whether discrimination was the actual motive behind plaintiff's discharge). Second, Plaintiff's claim that the feedback he received was "papering" his file is utter speculation, belied by the wide scope and extreme specificity of the criticism provided. *See* Dkt No. 40 at ¶¶ 74, 76-77, 79-81, 83-84, 87-89. On numerous occasions the criticism of Plaintiff's sales and performance came with encouraging words hoping that he would succeed and meet his goals. *Id*. at ¶¶ 78, 82, 84, 85. The record shows that Plaintiff regularly received specific criticism about his performance, wholly consistent with Breitling's stated legitimate reasons for Plaintiff's ultimate termination. Thus, Breitling's criticism of Plaintiff's sales and performance is not evidence of pretext. *See Finn v. N.Y. State Off. of Mental Health - Rockland Psychiatric Ctr.*, 2011 U.S. Dist. LEXIS 115950, at *38-39 (S.D.N.Y. Oct. 6, 2011) (series of 'serious, independent, documented and therefore good

faith complaints' undermines employee's argument that employer's decision to terminate him was pretext for discrimination).

### B.    *Plaintiff's Salary Reduction*

Plaintiff contends that his salary was reduced after his sales territory was minimized is a pretext for discrimination. However, Breitling has articulated its legitimate business reasons for having reduced Plaintiff's territory (and consequently his base salary) in 2013. Prissert explained that he decided to split and reduce Plaintiff's and Annie Sommer's territory respectively because neither sales representative had achieved their 2012 sales numbers and goals, and Prissert determined that reducing their territory for 2013 would give them a chance to succeed on a smaller territory. *See* Dkt No. 39, Ex. B at ¶ 35. Since he reduced their territory and their responsibility, Breitling determined that Plaintiff's and Sommer's salaries should be reduced because they would be covering significantly less territory than they had the year before.[3] *See id.* at ¶ 36. The decision to reduce Plaintiff's territory was made to give him a chance to succeed; with responsibility for a smaller territory, Plaintiff would have a better chance of meeting his sales goals. Plaintiff does not offer any evidence to even suggest that this rationale is not true or that the decision had anything to do with Plaintiff's sexual orientation.

### C.    *The Promotion of Isaac Schafrath*

As Breitling explained in its original Motion for Summary Judgment, Plaintiff's assertion that Schafrath's promotion evidences pretext has no support. Prissert explained that the reason he decided to promote Schafrath was that Schafrath was performing well in his current job, had expressed a desire to do something else within Breitling, and he knew the brand and product very well. *See* Dkt. No. 40 at ¶138. Plaintiff cannot dispute this. Now, Plaintiff seeks to second-guess Prissert's decision to promote Schafrath, alleging that because Schafrath did not have specific sales experience, his promotion *must* have been for discriminatory reasons. However, Prissert explained that when Plaintiff had his territory reduced because it was not performing well, Prissert decided to give Schafrath a chance as a sales representative[4] as additional territory now had to be covered and he would not have to train someone on the product, which Schafrath knew well. *See* Dkt. No. at ¶¶ 130-136. There is simply no evidence that Prissert promoted Schafrath because of Plaintiff's sexual orientation and Plaintiff cannot point to any. Further undercutting Plaintiff's claim that

---

[3] The fact that Ms. Sommers, who is heterosexual, also had her territory minimized and her salary reduced demonstrates that the actions Breitling undertook were not based on Plaintiff's sexual orientation.

[4] Nothing in record supports Plaintiff's claim that Prissert had any kind of special "relationship" with Schafrath. Rather, Schafrath testified that he discussed sports on a few occasions with Prissert, but Plaintiff's characterization of Prissert's "relationship" with Schafrath is utter fabrication.

Hon. George B. Daniels
December 23, 2020
Page 8

Prissert favored Schafrath is the fact that Prissert *admitted* retrospectively that it had been a mistake to promote Schafrath, and Prissert ultimately demoted Schafrath. *See* Dkt No. 39, Ex. B. at ¶ 41.

### D.    *Plaintiff's Disciplinary History*

Plaintiff complaints about his disciplinary history are equally unavailing. Plaintiff complains about two warnings he received, one concerning an incident involving Prissert, and the second concerning a warning he received by giving out cash gifts. Specifically, he contends that he was disciplined more harshly than other employees. This is utter nonsense.

In order to show that he was disciplined in an unlawful manner when compared to other employees, Plaintiff must show that he and his comparator are similarly situated. *See Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir. 2001). To be "similarly situated," there needs to be a "reasonably close resemblance to facts and circumstances" of a plaintiff's and comparator's cases. *Id.* The incidents surrounding Plaintiff's two warning are not similar to any other person.

With respect to the warning he received concerning Prissert, Plaintiff alleges that he was treated differently than a heterosexual male sales representative "X". However, the facts surrounding Plaintiff's disciplinary write-up for publicly cursing at Prissert are not comparable to sales representative "X"'s misuse of company funds. Primarily, Plaintiff takes issue with the fact that an alleged "full investigation" occurred in reference to "X", while Plaintiff was summarily given a write-up from Prissert. However, in Plaintiff's case, Prissert was physically present for the alleged conduct, so there was no reason for Prissert to conduct an "investigation"- he saw and heard what had transpired. *See* Dkt No. 39., Ex. "BB". In "X"'s case, Breitling had to conduct an investigation to determine whether wrongdoing had in fact occurred. *See* Dkt. No. 40 at ¶¶ 152-153. Plaintiff has not shown that Breitling treated "X" more favorably, nor are the two incidents comparable to draw any inference about how Breitling treated the two employees.

As for the warning concerning cash gifts, such an incident is not even an adverse employment action as other than being given a warning Plaintiff suffered no other consequences. *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 306 (N.D.N.Y. 2013) ("Verbal and written warnings generally do not constitute adverse employment actions[.]" (citing *Terrerwien v. Entergy Nuclear Operations, Inc.,* 773 F.3d 556, 559-70 (2d Cir. 2011)). However, even if this warning did rise to an adverse employment action, no other person, much less another sales representative, ever engaged in similar behavior. As such, there is no one to compare Plaintiff to and this warning does not demonstrate pretext in any fashion. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 568 (2d Cir. 2000) (holding that the plaintiff failed to "create a jury question on pretext" because she could not show comparator engaged in similar conduct).

Hon. George B. Daniels
December 23, 2020
Page 9

### E. *Plaintiff's Poor Attitude*

In his Opposition Letter, Plaintiff alleges that Breitling belief that Plaintiff had a poor attitude is pretextual. Plaintiff's assertion is the epitome of his own subjective disagreement with Breitling's business decisions and cannot sustain the burden of showing pretext. *See Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409, 430 (E.D.N.Y. 2012) ("It is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.").

Moreover, the facts demonstrate that Plaintiff did, in fact, have a negative attitude regardless of what others may have thought of him. Examples of this negative attitude included: (i) some of his sales accounts/customers having expressed to Breitling management that Plaintiff was bitter and unhappy with his job at Breitling; (ii) Plaintiff publicly exclaimed at a meeting in front of the other sales representatives that he would only work "9 to 5"; (iii) Plaintiff regularly resisted any kind of constructive criticism and expressed that he knew how to do his job and needed no guidance or performance criticism (despite declining sales numbers); (iv) Plaintiff failed to consistently visit all of his accounts and he resisted suggestions that he should make more visits to his accounts; (v) Plaintiff wrote in a self-evaluation that he would better be suited as President of the Company; and (vi) Plaintiff resisted using new tools and methodology Breitling required him to use. *See* Dkt No. 39, Ex. B. at ¶49 and Ex. C. at ¶ 41.

As such, Plaintiff simply cannot demonstrate pretext, as is his burden.

\*          \*          \*

For the reasons set forth herein, Breitling's opening letter, and its original Motion for Summary Judgment, the Court should grant summary judgment in favor of Breitling and dismiss Plaintiff's remaining claims in their entirety.

Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Glenn S. Grindlinger*

James Lemonedes
Glenn S. Grindlinger

cc:   All counsel of record via ECF

Active\117083966.v1-12/23/20